Filed 7/26/13

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| In re A.H. et al., Persons Coming Under the Juvenile Court Law. | H038633 (Santa Clara County Super. Ct. Nos. JD20223; JD20224 ) |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES, Plaintiff and Respondent, v. F.S. et al., Defendants and Appellants. | |


In the present dependency proceeding, minors A.H. and S.H. (the children), were declared dependents of the court. (Welf. & Inst. Code, §§ 300, subds. (a) &(b).)[1] On April 16, 2012, after the 18-month review hearing, the juvenile court terminated family reunification services to F.S (mother) and made an order setting a section 366.26 hearing for August 8, 2012. On August 3, 2012, the children's parents, F.S. and S.H. (father),[2] filed a timely notice of appeal from two rulings of the juvenile court: (1) the July 25,

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise specified. We have taken judicial notice of the prior appellate record in Case Number H036264. (Evid. Code, §§ 452, subd. (d), 459.)

[2]     Father is also known as D.S.H.

2012 order denying mother's Motion to Vacate a Default Judgment and (2) the June 19, 2012 order denying parents' modification motion to place the children with relatives (§ 388).[3]

Parents now raise contentions not directly challenging the rulings from which they appeal. Mother makes the following arguments: (1) the juvenile court failed to inform mother of the writ requirements for challenging the order setting a section 366.26 hearing by mail as required, (2) the juvenile court failed to obtain a valid waiver of her right to counsel and, therefore abused its discretion in granting her request to represent herself on February 16, 2012 and then the court failed to advise parents of their right to counsel at the 18-month review hearing on April 16, 2012 (see Cal. Rules of Court, rule 5.534(g)),[4] (3) Judge Yew improperly heard the 18-month review after mother allegedly timely challenged the judge and attempted to disqualify the judge from hearing the matter, and (4) the evidence did not support the court's finding following the 18-month review hearing that reasonable reunification services were provided to mother.

Father joins in mother's arguments one and three; he claims that the juvenile court failed to advise him of the writ requirement. He further claims that the juvenile court (1) failed to adequately inquire into his competency and erred by not appointing a guardian ad litem for him at the January 26, 2012 hearing and (2) failed to determine whether he was mentally competent to waive counsel and, therefore, abused its discretion by granting his request to represent himself on February 15, 2012.

---

[3] Insofar as parents may also be attempting to also appeal from the court's April 25, 2012 order denying their peremptory challenge, it is not an appealable order. (Code Civ. Proc., § 170.3, subd. (d); see *People v. Hull* (1991) 1 Cal.4th 266, 268 [writ of mandate under Code of Civil Procedure section 170.3, subdivision (d), is the exclusive means by which a party may seek review of an unsuccessful peremptory challenge against a trial judge].)

[4] All further references to rules are to the California Rules of Court.

2

Under ostensible authority of *In re Cathina W.* (1998) 68 Cal.App.4th 716, respondent Santa Clara County Department of Family and Children's Services (Department) concedes that mother was entitled to challenge the juvenile court's order setting the section 366.26 hearing. We do not accept this concession. For the reasons explained below, we find that none of the issues sought to be raised on appeal is cognizable and dismiss the appeal.

*Procedural History*

Dependency petitions were filed on behalf of the children. In July 2010, parents filed the Judicial Council "Notification of Mailing Address" forms (JV-140), which each designated the same permanent mailing address in San Jose, California. The form itself advised that all documents and notices would be sent to the address provided "until and unless you notify the court or the social worker . . . on your case of your new mailing address." It directed: "Notice of the new mailing address must be provided in writing."

A first amended petition was filed on August 30, 2010.

Following a contested jurisdiction hearing, the court found the children were described by section 300, subdivisions (a) (serious physical harm) and (b) (failure to protect). The children were adjudged dependent children of the court. This court rejected father's challenges to the jurisdictional and disposition orders in a prior appeal (H036264).

On October 11, 2011, following a consolidated six-month/12-month review hearing, the juvenile court found, by clear and convincing evidence, that reasonable services had been offered and provided to parents. The court terminated family reunification services to father and terminated the children's visitation with father due to the detriment to their wellbeing. At that time, both mother and father were represented by counsel.

The status review report, dated January 3, 2012, for the 18-month review hearing and addendum reports recommended that the court terminate family reunification

3

services to mother and set a section 366.26 hearing.  The status review report reflected that father remained at the originally noticed San Jose address but stated a Campbell address for mother.

On January 3, 2012, the date set for the 18-month review hearing, mother was represented by an attorney with the Office of Dependency Counsel (ODC).  Mother challenged the competency of the ODC and the juvenile court continued the matter until January 11, 2012 for a *Marsden* hearing (see *People v. Marsden* (1970) 2 Cal.3d 118)[5] and the 18-month review hearing.

On January 9, 2012, mother filed a combined "preemptory challenge" and request for judicial disqualification against Judge Teresa Guerrero-Daley.

On January 11, 2012, by written order, the juvenile court denied the preemptory challenge as untimely and struck the statement of disqualification.  At the January 11, 2012 hearing, all parties were personally served with a copy of that decision and the court denied the peremptory challenge. After several warnings, parents were removed from the courtroom. The court ordered the deputy to look for them to provide a second opportunity to participate in the day's hearing but they could not be located.  The court took the *Marsden* hearing off calendar and continued the matter until January 18, 2012 for a *Sara D.* hearing (see *In re Sara D.* (2001) 87 Cal.App.4th 661) for father and a waiver of counsel hearing for both parents and ordered the 18-month review hearing to trail.

On January 26, 2012, hearings were held before Judge Daniel Nishigaya.  After a closed *Sara D.* hearing regarding an appointment of a guardian ad litem (GAL) for father, the juvenile court determined that such appointment was unnecessary because father

---

[5]     "Juvenile courts, relying on the *Marsden* model, have permitted the parents, who have a statutory and a due process right to competent counsel, to air their complaints about appointed counsel and request new counsel be appointed.  (§ 317.5; *In re James S.* (1991) 227 Cal.App.3d 930, 935, fn. 13.)"  (*In re V.V.* (2010) 188 Cal.App.4th 392, 398; see *In re Z.N.* (2009) 181 Cal.App.4th 282, 289 [*Marsden* principles apply by analogy to dependency proceedings].)

4

understood the nature and consequences of the dependency proceedings and was able to assist counsel. The court then considered parents' request for self representation. Upon inquiry by the court, both parents clarified that they were not asking the court to appoint different counsel but rather wished to represent themselves. The court confirmed that each parent had received a JV-2023 form (Advisement and Waiver of Right to Counsel). In addition, the court gave an oral advisement regarding disadvantages of self-representation. The court directed parents to make their decision regarding self-representation by the next hearing. The matter was continued until February 15, 2012.

On February 15, 2012, the court again explained that self-representation was disfavored and discouraged and individuals representing themselves do not receive special treatment or legal advice from the court and are treated the same as lawyers. Father completed, initialed and signed the "Advisement and Waiver of Right to Counsel" form, which spelled out the disadvantages of self-representation and indicated that the court's advice and recommendation was that he not represent himself and he accept court-appointed counsel. Father confirmed that he understood everything on the form and what he was undertaking by choosing to represent himself. The court found that father's waiver of the right to counsel was knowing, intelligent, free, and voluntary and it granted father's request to represent himself.

Mother told the court that she was interested in relieving her current court-appointed counsel and hiring her own attorney but she had a financial issue. Mother indicated that, if she could not have a different court-appointed counsel, she was comfortable representing herself. The court continued the matter to the following day for a *Marsden* motion as to mother.

At the time scheduled for the *Marsden* hearing on February 16, 2012, mother made plain that she wanted to represent herself. Mother completed, initialed and signed the "Advisement and Waiver of Right to Counsel" form. Mother had no concerns or questions. She understood that she would not receive special treatment from the court,

5

the court was not going to assist her in presenting her case, and she would be held to same standards as licensed attorneys. The court confirmed that mother, keeping in mind everything the court had previously said about representing oneself and everything she had initialed on the form, still wanted to represent herself. The court granted mother's request for self-representation.

On March 1, 2012, the juvenile court held a trial setting conference before Judge Nishigaya. Father was not present.

On March 19, 2012, the juvenile court held a trial management conference before Judge Nishigaya. When asked why he was not present at the prior conference, father indicated he was attending to other matters, including "moving into a new place." After discussion, the court deemed the 18-month review hearing a long cause matter and scheduled it for April 16, 2012. The court reminded parents that all notifications and documents concerning the proceedings would be sent by the court or the Department to whatever address they had on file with the court. The court warned parents that if they wished to receive notifications and documents at a different address, they would have to change their permanent mailing address in writing and unless and until that happened everything would be sent to the address on file. The court told parents that they could not subsequently complain that "you were not aware that notices were being sent to that written address or that address you have on file."

At the beginning of the 18-month review hearing on April 16, 2012, father became upset because the hearing was not before Judge Nishigaya and threatened to leave. Judge Erica Yew explained that the matter was before her because it had been set on the long-cause calendar and she told father that the hearing would proceed without him if he left. Mother indicated she wished to have Judge Nishigaya as well.

During the discussion regarding the witness schedule, counsel for the Department mentioned that Marla Johanning might be called as a rebuttal witness. Judge Yew began to explain that, "years ago," Johanning and she had been part of a community group that

6

started a collaborative assisting families dealing with violence. Both parents became incensed, began talking over each other, and walked out. Before they left, Judge Yew warned them that the trial would go forward without them if they left the courtroom.

Later in the hearing, Judge Yew indicated for the record that she had worked with Johanning in 2006 but, after she "went to dependency," they did not have much contact. Judge Yew also stated with respect to parents: "[B]ecause they represented themselves, they did not know about a 170.6. I wanted to tell them if they wanted to exercise the challenge they could have, but I could not get a word in to do that."

After parents' outburst and departure, the Department's counsel submitted the matter on the reports. The juvenile court terminated mother's visitation with the children and prohibited mother's physical contact or communication with them based on detriment to their wellbeing. It found that reasonable reunification services had been offered and provided to mother. The court terminated reunification services to mother and ordered the setting of a section 366.26 hearing.

Sometime later that day, parents filed a combined Code of Civil Procedure section 170.6 peremptory challenge and request for disqualification against Judge Yew (Code Civ. Proc., §§ 170.1, 170.6). The motion's heading reflected a San Jose address on S. Market Street.

A proof of service indicates that, on April 17, 2012, the day after the 18-month review hearing, the clerk of the court mailed a blank Notice of Intent to File Writ to mother at the Campbell address reported for her in the Department's Status Review Report for the 18-month review hearing and to father at the San Jose address specified in his Notification of Mailing Address. The record discloses that the mailing included, among other documents, JV-820 ("Notice of Intent to File Writ Petition And Request for Record . . .") and JV-825 ("Petition for Extraordinary Writ") (hereinafter "Notice of Intent to File Writ packet").

7

The Notice of Intent to File Writ packet sent to father was returned to sender and received by the court on April 24, 2012. The postal label states "Return to Sender," "Attempted – Not Known," "Unable to Forward."

It appears that the Notice of Intent to File Writ packet was originally mailed to mother at her Campbell address. It was received back to the court on April 27, 2012. The postal label stated: "Return to Sender [¶] [mother's name] [¶] [S. Market Street address] [¶] Return to Sender."

By order filed on April 25, 2012, the court issued an order denying parents' peremptory challenge as untimely because it was filed after conclusion of the 18-month review hearing. Also on April 25, 2012, Judge Yew filed a "Verified Answer" in which she stated that she did not know of any facts or circumstances requiring her disqualification or recusal in this case.

The Notice of Hearing on Selection of a Permanent Plan, filed May 4, 2012, specified that a section 366.26 hearing would be held on August 8, 2012. The record on appeal contains declarations of reasonable diligence of a registered process server, which indicate that unsuccessful attempts were made to personally serve that notice on parents. When the process server attempted to personally serve the notice on father on May 1, 2012 and on mother on May 4, 2012 at the original San Jose address that the parents' written notifications in the court file designated as their permanent mailing address, the process server found that the apartment was occupied by someone else and the parent was unknown. On May 2, 2012, the process server found that a church was located at the S. Market Street address and father was unknown. On May 4, 2012, the process server found that the Campbell address was a vacant apartment.

On June 19, 2012, parents filed a motion to modify the children's placement pursuant to section 388. The motion was denied the same day.

Also on June 19, 2012, parents filed a Petition to Modify, Change or Set Aside Previous Orders—Change of Circumstances (JV-740). The court denied the petition,

8

noting that they sought to revisit issues that were the subject of the contested hearing conducted on April 16, 2012.  The ruling stated in part: "The parents cannot decline to participate in a contested evidentiary hearing and then seek to litigate the issues by filing a procedurally defective document with attachments."

On July 10, 2012, mother filed a "Motion to Vacate a Default Judgment of 4-16-2012."  The court denied the motion on July 25, 2012.

On July 23, 2012, father and mother separately each filed a new Notification of Mailing Address specifying a change of address.  Both notifications specified the San Jose address on S. Market Street at which location the registered process server had found a church.

On August 3, 2012, parents filed their notice of appeal from the July 25, 2012 order denying their motion to vacate and from the June 19, 2012 order denying their motion to modify the children's placement.

*Discussion*

A.  *Judicial Advisement of Writ Requirement*

Parents claim that this court may reach the merits of the issues concerning the 18-month review hearing because they were not properly advised by mail of the writ requirement for challenging an order setting a section 366.26 hearing and therefore, under existing case law, their compliance with that requirement is excused.

Section 366.26, subdivision (*l*), provides that an order setting a section 366.26 hearing "is not appealable at any time" unless "[a] petition for extraordinary review was filed in a timely manner," the petition raised the substantive issues and they were supported by an adequate record, and the writ petition "was summarily denied or otherwise not decided on the merits."  (§ 366.26, subd. (*l*)(1); see § 366.26, subd. (*l*)(2).)  This writ requirement is implemented by the Rules of Court.  (See § 366.26, subd. (*l*)(3); rules 8.450 & 8.452; see also rule 8.403(b)(1).)

9

After the juvenile court makes an order setting a section 366.26 hearing, the court must advise all parties, including a parent, of section 366.26's requirement of filing a petition for extraordinary writ review. (Rule 5.590(b); see § 366.26, subd. (*l*)(3)(A).) The court must give an oral advisement to parties present at the time the order is made. (Rule 5.590(b)(1); see § 366.26, subd. (*l*)(3)(A).) The court must explain that the party is required to seek an extraordinary writ by filing a Notice of Intent to File Writ Petition and Request for Record (form JV-820) and a Petition for Extraordinary Writ (form JV-825). (Rule 5.590(b).) "Within one day after the court orders the hearing under Welfare and Institutions Code section 366.26, the advisement must be sent by first-class mail by the clerk of the court to the last known address of any party who is not present when the court orders the hearing under Welfare and Institutions Code section 366.26." (Rule 5.590(b)(2).) Copies of Petition for Extraordinary Writ (form JV-825) and Notice of Intent to File Writ Petition and Request for Record (form JV-820) "must accompany all mailed notices informing the parties of their rights." (Rule 5.590(b)(4).) The Judicial Council's JV-820 form contains an advisement about the need to file the Notice of Intent form to obtain Court of Appeal review of an order setting a section 366.26 hearing and provides important information regarding completion and filing of the form, filing of the writ petition, and specific deadlines.

In *In re Cathina W., supra,* 68 Cal.App.4th 716 (*Cathina W.*), one of the cases cited by mother, the appellate court concluded that mother was entitled to review of the juvenile court's order setting the section 366.26 hearing on appeal from the subsequent order terminating her parental rights at the section 366.26 hearing because mother was not duly advised of the writ requirement. (*Id*. at pp. 722-725.) In that case, the undelivered envelope containing the Notice of Intent was marked "Return to Sender" and had mother's new address on it but the court clerk did not re-mail the notice to the mother at the new address. (*Id. at p.* 723.) In addition, the notice was sent late and date of the setting order was misstated. (*Ibid*.)

10

In *In re Rashad B.* (1999) 76 Cal.App.4th 442 (*Rashad B.*), another case cited by mother, the appellant mother did not appear for the continued jurisdictional/dispositional hearing, at which time "the court sustained the petitions, adjudged the minors dependents, continued their placement out of home, denied reunification services to appellant pursuant to section 361.5, subdivision (b)(10)(A) and set a hearing pursuant to section 366.26." (*Id*. at p. 446.) After a section 366.26 hearing, the juvenile court terminated the mother's parental rights and referred the children for adoption. (*Id*. at p. 446.) On appeal from the orders following that hearing, the mother raised several alleged errors occurring prior to the section 366.26 hearing. (*Id*. at p. 444.)

The appellate court in *Rashad B.* found that the juvenile court did not give the mother "notice of her right to file a writ petition because the court erroneously failed to ascertain appellant's permanent mailing address (to which notice could be sent) when appellant appeared in court at the inception of the dependency." (*Id*. at p. 444.) No advisement of writ review was sent to her "because, in the words of the court, 'ADDRESSES UNKNOWN.' " (*Id*. at p. 446.) The appellate court concluded that the mother was "excused from her failure to file a writ petition, and her current claims are therefore cognizable on appeal" from orders issued after the section 366.26 hearing. (*Id*. at p. 444.)

*Cathina W.* and *Rashad B.* stand for the proposition that judicial error in failing to advise a party in a dependency proceeding of the writ requirement for challenging an order setting a section 366.26 hearing that results in a failure to file a writ petition may excuse a party's failure to comply with that requirement and allow a reviewing court to reach the issues on appeal from the orders following the section 366.26 hearing. This is not a purported appeal from the order setting the section 366.26 hearing or an appeal from orders issued after section 366.26 hearing. In any case, the record does not demonstrate that parents' failure to comply with the writ requirement should be excused for exceptional circumstances constituting good cause.

11

"At the first appearance by a parent or guardian in proceedings under section 300 et seq., the court must order each parent or guardian to provide a mailing address." (Rule 5.534(m); see § 316.1, subd. (a).) A parent's designated permanent mailing address is used by the court and the social services agency for notice purposes *unless and until* the parent provides written notice of a new mailing address. (See § 316.1, subd. (a).) The Judicial Council has developed a "Notification of Mailing Address" form for parents to use to notify the juvenile court and Department of their permanent mailing address and any subsequent change thereof. (See JV-140; JV-140S; see also § 316.1, subd. (b).) The permanent mailing address provided by both parents in their notifications on file in April 2012 is *not* the address they are now claiming was their correct address for the mailing of the Notice of Intent to File Writ packet.

On appeal, parents indicate that the correct mailing address was the S. Market Street address reflected in the headings on the first page of mother's additional designation of witnesses (filed April 11, 2012), mother's supporting documents (filed on April 16, 2012) and parents' written motion to disqualify Judge Yew (filed April 16, 2012). As indicated, that S. Market Street address turned out to be the location of a church. A register process server unsuccessfully attempted to personally serve father with a notice at that address on May 2, 2012.

This case is distinguishable from the cited cases. The record in this case discloses that the clerk of the superior court timely mailed a Notice of Intent to File Writ packet to parents on April 17, 2012. Also unlike *Cathina W.*, *supra*, 68 Cal.App.4th at page 723, the notice correctly stated the date of the setting order. This is not a case where the court failed to obtain the parents' permanent mailing addresses in the first place. (Cf. *Rashad B.*, *supra*, 76 Cal.App.4th at pp. 444, 449-450.)

The Notification of Mailing Address forms filed by parents at the inception of the dependency proceedings contained a clear advisement that each parent must file a new form to notify the court, clerk, and social services agency of a change of permanent

12

mailing address.  On March 19, 2012, the juvenile court admonished parents to provide written notification of any change of permanent mailing address and warned them that they would have no basis for complaining they were unaware of notices if they failed to do so.

As indicated, the clerk mailed a Notice of Intent to File Writ packet to father at the address specified in the parents' original notifications and it was returned to the court without any forwarding address.  In contrast to *Cathina W.*, the returned envelope did not provide a new address for him.  Accordingly, the obligation to advise father of the writ requirement (§ 366.26, subd. (*l*)(3)(A); rule 5.590(b)) was satisfied.  Further, the incidental inclusion of an address on a document filed with the court by a parent does not constitute written notification of a change in the parent's permanent mailing address to the court, the clerk, and the social services agency.  In short, father's failure to receive mailed notice of that requirement was not attributable to court error.  Moreover, when a registered process server attempted to personally serve a notice on father at the S. Market Street address at the beginning of May 2012, he discovered a church at that location and father was unknown.  Father has not shown that the writ requirement should be excused.

It appears the clerk mailed a Notice of Intent to File Writ packet to mother at her Campbell address (reported in the January 2012 Status Review Report for the 18-month review) instead of the designated permanent mailing address.  It can be implied that the Campbell address was mother's last known address.  But mother is not claiming that she was still living at either address at the time the packet was mailed by the clerk on April 17, 2012.  The evidence of the attempts to serve her with a notice in May 2012 also indicates that she was not living at either address at the time of that mailing.  At the beginning of May 2012, the registered process server found the San Jose address on file occupied by another tenant and the Campbell address vacant.

The Notice of Intent to File Writ packet mailed to mother at her Campbell address was returned to the court with a postal label stating "Return to Sender" and the S. Market

13

Street address.  The parties seem to believe that the label means that the S. Market Street address had been given as a change of address, impliedly to the U.S. Post Office.  If so, it is not clear why the mail was not forwarded to that address by the Post Office and we can only speculate that perhaps the time for forwarding mail had expired.  Even if the clerk of the court could have mailed the packet to mother at that address, we do not think good cause has been shown to excuse the writ requirement as to mother.

Like father, mother did not file written change of address notifications giving that S. Market Street address until late July 2012 even though the court had reminded parents of that obligation only the month before issuing the setting order.  The returned packet with the S. Market Street address was not received by the court until April 27, 2012.   On May 2, 2012, a process server found that a church was located at the S. Market Street address and father was unknown.

Mother argues that it is not enough that the process server unsuccessfully attempted to serve father with a notice at the church located at the S. Market Street address and it was not a "bogus" address for her.  She points out the process server who had attempted to personally serve father at the church address provided her "with substituted service at the same address by leaving a notice with the person in charge, who acknowledged that [she] did receive her mail there."  The record shows that substituted service was effected on mother by delivering a copy of the notice of the section 366.26 hearing to the S. Market Street address on May 31, 2012 and leaving it with the "person in charge" who stated mother received mail there and thereafter mailing a copy to that address.

We find that this evidence cuts the other way.  Although mother acknowledges she was served with the notice of the section 366.26 hearing, she apparently did not seek to appeal from the order setting that hearing.  Consequently, we are not in the procedural posture to treat a timely appeal from an order setting a section 366.26 hearing as a cognizable appeal or as a writ petition.  (Cf. *In re Merrick V.* (2004) 122 Cal.App.4th

14

235, 247-249 [appellate court reviewed mother's claims on appeal from setting order because court failed to orally provide her with notice of the writ requirement]; *Jennifer T. v. Superior Court* (2007) 159 Cal.App.4th 254, 260 (*Jennifer T.*) [where juvenile court failed to orally advise mother of her writ rights, appellate court construed purported appeal from order setting section 366.26 hearing as a standard petition for writ of mandate "without regard to the shortened period for writ review that would otherwise be applicable (Rules 8.450, 8.452.)"[6]].)

Moreover, mother at some point became aware of the writ requirement but she did not seek an extension of time to file a late Notice of Intent to File a Writ supported by an adequate showing. Rule 8.450(d) now provides as to extensions of time: "The superior court may not extend any time period prescribed by rules 8.450-8.452. The reviewing court may extend any time period but must require an exceptional showing of good cause."[7]

Because they stormed out of the 18-month review hearing on April 16, 2012, parents did not receive the oral advisement of the writ requirement. Parents failed to timely file written notification of their change of permanent mailing address as required even though the court had reminded them of that obligation only the month before. (See § 316.1, subd. (a).) We do not think that the appellate record demonstrates exceptional

[6] The Second District Court of Appeal concluded in *Jennifer T.* that "[b]ecause the right to appeal is purely statutory, an appellate court cannot confer the right to appeal as a remedy for the juvenile court's failure to advise a party of the writ requirement. (§ 366.26, subd. ( *l* )(3)(A).)" (*Jennifer T., supra,* 159 Cal.App.4th at p. 260.)

[7] Rule 8.450(f)(2) states in pertinent part: "If a notice of intent is . . . late, the superior court clerk must promptly: [¶] (A) Mark the notice of intent 'Received [date] but not filed;' [¶] (B) Return the marked notice of intent to the party with a notice stating that: [¶] (i) The notice of intent was not filed either because . . . it is late; and [¶] (ii) The party should contact his or her attorney as soon as possible to discuss this notice, because the time available to take appropriate steps to protect the party's interests may be short; and [¶] (C) Send a copy of the marked notice of intent and clerk's notice to the party's counsel of record, if applicable."

15

circumstances justifying excusing either parent's compliance with the writ requirement. We decline to review contentions concerning the 18-month review hearing in this appeal from later rulings.

B. *Scope of Appeal and Cognizable Issues*

As stated, parents' August 3, 2012 notice of appeal purports to appeal from the juvenile court's July 25, 2012 order denying mother's Motion to Vacate a Default Judgment and from its June 19, 2012 order denying parents' modification motion to place the children with relatives (§ 388). Their contentions, however, challenge prior determinations and orders.

"A judgment in a proceeding under Section 300 may be appealed in the same manner as any final judgment, and any subsequent order may be appealed as an order after judgment." (§ 395, subd. (a)(1).) The notice of appeal must ordinarily "be filed within 60 days after the rendition of the judgment or the making of the order being appealed." (Cal. Rules of Court, rule 8.406(a)(1).)

"The dispositional order is the 'judgment' referred to in section 395, and all subsequent orders are appealable. [Citation.] ' "A consequence of section 395 is that an unappealed disposition or postdisposition order is final and binding and may not be attacked on an appeal from a later appealable order." [Citation.]' [Citations.]" (*In re S.B.* (2009) 46 Cal.4th 529, 532.) Stated another way, "[a]n appeal from the most recent order in a dependency matter may not challenge earlier orders for which the time for filing an appeal has passed. [Citation.]" (*Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1018.) " 'Permitting a parent to raise issues going to the validity of a final earlier appealable order would directly undermine dominant concerns of finality and reasonable expedition,' including 'the predominant interest of the child and state . . . .' [Citation.]" (*Ibid.*)

Accordingly, we conclude that *none* of parents' contentions raised on appeal concerning earlier final appealable orders are cognizable.

16

C. *No Issues Raised Regarding the June 19 and July 25, 2012 Rulings*

Parents do not assert any error concerning the June 19, 2012 order denying the motion to modify the children's placement or the July 25, 2012 order denying their motion to vacate a default judgment.  Thus, no cognizable issue remains for this court's review.

Accordingly, we shall dismiss the appeal.

DISPOSITION

The appeal is dismissed.

_____

ELIA, J.

WE CONCUR:

_____

RUSHING, P. J.

_____

PREMO, J.

*In re A.H., et al., minors*

H038633

Trial Court:                          Santa Clara County Superior Court


Trial Judge:                         Hon. Daniel T. Nishigdaya


Attorney for Appellant Mother:   Allison Cruz, Under Appointment by
                                      the Court of Appeal


Attorney for Appellant Father:   Louise E. Collari, Under Appointment by
                                      the Court of Appeal


Attorneys for Respondent:        Orry P. Korb,
                                 County Counsel, and
                                 Julie F. McKellar,
                                 Deputy County Counsel


*In re A.H., et al., minors*

H038633