Filed 12/23/13  In re Alex H. CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re Alex H. et al., Persons Coming Under the Juvenile Court Law.<br><br>_____<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>KATHERINE G.,<br><br>      Defendant and Appellant. | B247978<br><br>(Los Angeles County<br>Super. Ct. No. CK85818) |

APPEAL from an order of the Superior Court of Los Angeles County, Anthony Trendacosta, Commissioner.  Affirmed.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, William D. Thetford, Deputy County Counsel, for Plaintiff and Respondent.

_____

Katherine G. (mother) appeals from the juvenile court's order denying her Welfare and Institutions Code section 388[1] petition, which sought reinstatement of reunification services or the return of her children Alex and A.H. to her or to the maternal grandmother. The juvenile court did not abuse its discretion, and we affirm its order denying mother's petition.

## FACTUAL AND PROCEDURAL SUMMARY

Alex (born in 2009) and A.H. (born in 2010) came to the attention of the Department of Children and Family Services (DCFS) as a result of a police response to a domestic violence call in December 2010. In February 2011, the juvenile court sustained parts of DCFS's section 300 petition alleging the children's presumed father, Angel H. (father), hit mother while she was holding two-month old A.H., and had earlier dragged and struck mother in the stomach while she was pregnant. Also sustained were allegations that the parents used methamphetamine and marijuana. The children were removed from the parents' custody, and the parents were granted monitored visitation and reunification services. They were ordered to complete drug rehabilitation with random testing, group domestic violence counseling, parenting education, and individual counseling. In December 2011, mother gave birth to a third child, Angel, who also was detained and placed with his siblings in the home of the maternal grandmother.

The parents lived together through most of the period when reunification services were provided for the two older children. On April 5, 2012, father was arrested for domestic violence after he hit mother with his fists, dragged her on the ground by her hair, and kicked her in the head and stomach several times. On April 12, the court combined the twelve-month review hearing for Alex and A.H. with Angel's jurisdictional hearing. The court sustained allegations of domestic violence and substance abuse in DCFS's section 300 petition as to Angel and added him to the parents' reunification plan. It terminated father's reunification services as to Alex and A.H., continued mother's

---

[1] All statutory references are to the Welfare and Institutions Code.

services, and ordered separate monitored visits for each parent. In May, the children were placed in foster care after the maternal grandmother requested their removal due to ongoing problems with the parents.

At the time of the 18-month review hearing for the two older children in June 2012, mother was not in compliance with her case plan. She had been terminated from her domestic violence program for lack of attendance and had not completed a parenting program. By December 2011, mother had completed 21 individual counseling sessions and an outpatient substance abuse program, but she had not enrolled in an after-care substance abuse program as recommended by her counselor. Between February and April 2012, she had missed five out of seven drug tests. The court terminated mother's reunification services as to Alex and A.H. and scheduled a section 366.26 hearing for them.

Two days before the June 2012 hearing, mother enrolled in a residential substance abuse program at Foley House. In October, her program counselor reported mother was uncooperative, had learned nothing from the program, and continued to prioritize her relationship with father over reunifying with her children. Mother had visited the children regularly while they were placed with the maternal grandmother, but after they were removed to foster care, she missed some visits, came to others with father, argued with him, and talked on the phone with him. After entering Foley House, mother made no effort to visit the children at a location closer to their foster care placement, and the foster mother had to bring the children to Foley House.

In November 2012, mother moved to Building Blocks, a sober living facility and enrolled in Options for Recovery, a one-year treatment program for pregnant women or mothers with substance abuse problems. Since an adoptive home had not been found for Alex and A.H., and the maternal grandmother's adoptive home study was not likely to be approved, the section 366.26 hearing was continued. Mother filed her section 388

3

petition as to these two children in December 2012. A fourth child, Anthony, was born in January 2013.[2]

A combined hearing on the section 388 petition and a six-month review hearing as to the third child, Angel, was held on February 21, 2013. Mother testified she was "going on eight months" of sobriety, she had not been in a relationship with father "for a few months," and resuming that relationship was not her plan "at the moment." She was living at a sober living facility and participating in various programs and counseling at Options for Recovery. Her visits with the children were still monitored, but she claimed that if granted unmonitored visits, she would not allow father to be present. Mother characterized herself as "a work in progress." The characterization was seconded by her case manager at Options for Recovery, who testified mother was beginning to break "out of her denial" and was "learning and growing" as far as her relationships were concerned.

DCFS offered evidence disputing mother's claim that she was not in a relationship with father: father attended narcotics anonymous meetings at mother's sober living facility, which was located within a mile from his house, and he was present at Anthony's birth in January 2013. In February, father showed up at mother's scheduled time for a team decision meeting with DCFS, and the parents visited Angel, who was hospitalized for pneumonia, on the same day. Mother failed to drug test for DCFS consistently. Between April 2012 and January 2013, she missed 11 tests, and she tested negative nine times and positive for marijuana once in July 2012.

The court denied mother's section 388 petition and terminated the parents' reunification services for Angel. As to the petition, the court concluded mother had shown that she was making progress, but not that her circumstances had changed or that returning the two older children to her would be in their best interest. The court

---

[2] In April 2013, after the order at issue in this appeal, the court sustained a non-detained petition as to Anthony, removed him from father's custody, and ordered family preservation services for mother and reunification services for father.

specifically found mother was not credible, and it had no confidence that she would stay away from father.[3]

This appeal followed.

## DISCUSSION

The only issue on appeal is whether the court abused its discretion in denying mother's section 388 petition.

Section 388 provides the juvenile court with discretion to modify a previous order when a parent presents evidence of changed circumstances and demonstrates that the requested modification is in the child's best interests. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) The parent bears the burden of proving by preponderance of the evidence that the modification should be granted. (*Ibid.*) A showing of changing circumstances that "would mean delaying the selection of a permanent home for a child to see if a parent, who has repeatedly failed to reunify with the child, might be able to reunify at some future point, does not promote stability for the child or the child's best interests. [Citation.]" (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47.)

We review the court's decision on a section 388 petition for abuse of discretion. (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 318.) We do not reweigh the evidence, redetermine the credibility of witnesses, or resolve conflicts in the evidence or in the reasonable inferences that may be drawn from it. (*In re Casey D.*, *supra*, 70 Cal.App.4th at pp. 52–53.)

Mother relies on *In re Kimberly F.* (1997) 56 Cal.App.4th 519. The court in that case listed three nonexclusive factors bearing on a section 388 petition: "(1) the seriousness of the problem which led to the dependency, and the reason for any

_____

[3] At the end of the hearing, counsel for DCFS represented that there was a family interested in adopting the children, and DCFS later reported the children were matched with a prospective adoptive family on February 21, 2013, the day of the hearing. By April, they had begun weekday overnight visits and had grown attached to the prospective adoptive parents.

5

continuation of that problem; (2) the strength of relative bonds between the dependent children to both parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been." (*Id.* at p. 532.) The court acknowledged that the last factor, changed circumstances, was "the essence" of a section 388 petition. (*Id.* at p. 531.) The mother in *In re Kimberly F.* established that circumstances had changed because the reason for her children's removal, the unsanitary and unsafe conditions of the home, no longer existed at the time her section 388 petition was denied. (*Id.* at p. 526–527.)

That is not the case here. When she filed the section 388 petition in December 2012, mother had only recently enrolled in the year-long treatment program at Options for Recovery. By February 2013, when the court denied her petition, there was evidence suggesting mother had finally begun making progress on her case issues. But she was not close to completing the program or resolving the issues. At best, mother showed that her circumstances were changing, not that they had changed. That showing was insufficient under section 388. (See *In re Casey D.*, *supra*, 70 Cal.App.4th at p. 47.)

The court also questioned the credibility of mother's testimony that her circumstances were changing, and we may not redetermine the issue of her credibility on appeal. (See *In re Casey D.*, *supra*, 70 Cal.App.4th at pp. 52–53.) In the section 388 petition, mother apparently overstated her case by claiming she was living in a confidential location even though her sober living facility was close to father's residence, and he attended narcotics anonymous meetings open to the public at that facility. Father's presence at Anthony's birth, at a hospital visit to see Angel, and at mother's separately scheduled meeting with DCFS, all within weeks of the hearing, suggested the parents remained in contact despite mother's claim she had not been in a relationship with father for several months. Her response at the hearing that she did not plan to have a relationship with father "at the moment" is too ambiguous to suggest she had the resolve to stay away from him in the future, especially considering the fact that her continued relationship with him produced two additional children during the dependency proceeding. Mother also claimed she consistently tested negative for drugs even though

6

she had not consistently submitted to drug tests for DCFS and had tested positive for marijuana in July 2012, less than five months before filing the petition.

DCFS argues the first factor in *In re Kimberly F.*, *supra*, 56 Cal.App.4th 519, 530–531—"the gravity of the problem leading to the dependency and the reason that problem was not overcome by the final review"—is irrelevant at this stage of the proceeding. In determining whether a section 388 petition makes the necessary showing, "the court may consider the entire factual and procedural history of the case." (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189.) But mother's argument that drug use and domestic violence are not serious problems is unsupported by law or fact. Mother relies on *In re Rocco M.* (1991) 1 Cal.App.4th 814, 826 and *In re W.O.* (1979) 88 Cal.App.3d 906, 910–911 to argue that drugs in the home would not be sufficient to warrant a dependency proceeding in the case of infant children. She acknowledges those cases involved dispositional orders, and this case is past the dispositional stage. (See *In re A.H.* (2013) 218 Cal.App.4th 337, 351 [merits of earlier final orders not subject to review in appeal from later order].)

Nor was the availability of drugs to the children ever the issue in this case. Mother's drug use, by her own account, was linked to her relationship with father, who provided drugs to her and encouraged her to use them. Mother's unhealthy relationship with father, which resulted in both drug use and domestic violence, was the underlying problem that led to the dependency, and the record indicates mother had difficulty grasping that problem through most of this dependency case. For most of this case, she participated in programs only intermittently and reluctantly and appeared to be in denial about her relationship with father. As late as October 2012, her program counselor at Foley House commented on mother's lack of cooperation, unrealistic expectations, and faulty priorities. Thus, for two years after the removal of Alex and A.H. from her custody, mother made no substantive progress with her case plan. The court had good reason to be cautious about her newfound resolve in light of this long history of noncompliance.

Mother claims the second factor in *In re Kimberly F.*, *supra*, 56 Cal.App.4th 519, 532—"the strength of relative bonds between the dependent children to *both* parent and caretakers"—favors returning the children to her or the maternal grandmother since both had bonded with the children, who at the time of the hearing were not in a permanent or adoptive placement. Where, as here, the section 388 petition follows the termination of reunification services, the child's interest in continuity and stability is paramount. (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 317.) To rebut the presumption that continuity is in the child's best interest, the parent must show changed circumstances that would warrant modification of the court's earlier orders. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 310.) The changed conditions of the mother's home in *In re Kimberly F.* allowed the safe return of the children, who were ambivalent about being adopted by their caretakers. (*Id.* at pp. 523, 526, 532.) On the other hand, *In re Jasmon O.* (1994) 8 Cal.4th 398, 418, new evidence indicated that severing a bond with a caretaker would cause serious, long-term emotional damage to a child previously ordered returned to her father.

While the record indicates mother and the maternal grandmother maintained a relationship with the children, mother cites no evidence of an actual or significant bond with them. The children were three and two years old at the time of the hearing and had been out of mother's custody for most of their lives. Except for a short period between August 2011 and February 2012, mother's visits with them remained monitored, and by February 2013 were limited to four and a half hours on weekends. The maternal grandmother had brief custody of the children between March 2011 and May 2012, and then had unmonitored visits with them every other Sunday. DCFS did not consider her home a viable adoptive placement; it reported that she allowed father to visit the children, and during a single overnight visit over Christmas 2012, allowed mother to spend the night.

Mother is correct that the children were not yet permanently placed at the time of the hearing, but she offered no new evidence or changed circumstances that would require delaying or aborting the selection of a permanent or adoptive placement for them.

(See *In re Casey D.*, *supra*, 70 Cal.App.4th at p. 47.)  The court did not abuse its discretion in denying her section 388 petition.


## DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



                                                 EPSTEIN, P. J.

We concur:



MANELLA, J.



SUZUKAWA, J.