Filed 11/18/14  In re Michael P. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Glenn)

----

| | |
|---|---|
| In re Michael P. et al., Persons Coming Under the Juvenile Court Law. | C076250 |
| GLENN COUNTY HUMAN RESOURCES AGENCY,  Plaintiff and Respondent,  v.  M.P.,  Defendant and Appellant. | (Super. Ct. Nos. 13JP00652, 13JP00680) |

M.P., the mother of the minors Michael P. and N.F., appeals from the juvenile court's orders terminating her parental rights.  (Welf. & Inst. Code, §§ 366.26, 395.)[1] She contends she was not given adequate notice of the six-month review hearing for Michael and the jurisdictional and dispositional hearings as to N.F., and that these issues are not forfeited.  She claims the juvenile court erred in terminating reunification services

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

as to Michael and in denying reunification services as to N.F. She also claims the juvenile court failed to rule on that portion of her petition for modification requesting the minors' return or additional reunification services. We shall affirm the juvenile court's orders.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2013 seven-year-old Michael and four-year-old N.F. were placed in the custody of child welfare services after mother was admitted to a mental health facility for a 72-hour evaluation. Mother admitted to using drugs within two or three days of the minors' removal, and to having used marijuana and methamphetamine since 2007. Both children tested positive for methamphetamine.

The detention report listed an address for mother in Orland (Orland address No. 1) and a phone number beginning with the telephone prefix 988.[2] Michael was involved in a Butte County reunification case in 2007, and Michael and N.F. were in a Glenn County reunification case in 2011.

The Glenn County Human Resources Agency (the Agency) filed a dependency petition on behalf of the minors in March 2013. The juvenile court detained the minors the next day. The juvenile court advised mother at the detention hearing that it was "very important" for her to keep her attorney, the Agency, and the juvenile court apprised of her current address and telephone number. Mother was given a document packet that included a form for change of address or phone number. The juvenile court orally notified mother of the jurisdiction hearing in Orland later that month.

Mother was present at the March 2013 jurisdiction hearing and submitted on the petition, which the juvenile court sustained. Michael was placed in foster care and the court granted reunification services to mother. N.F.'s case was dismissed with sole legal

---

[2] While certain addresses and telephone numbers are relevant in this case, we omit the actual numbers and addresses to preserve the minors' privacy.

and physical custody given to N.F.'s father. Mother was given oral notice by the juvenile court of the April 2013 disposition hearing in Orland.

The April 2013 disposition report was served on mother by mail to Orland address No. 1. The report noted that mother had already begun drug and mental health services. Michael was placed in foster care with N.F.'s father.

Mother attended the April 2013 disposition hearing, where the juvenile court continued her services. The juvenile court gave oral notice to mother that the six-month review hearing for Michael was scheduled for October 3, 2013, at 8:30 a.m. in Orland.

In August 2013 Michael and N.F. were placed in protective custody after N.F.'s father left the minors in the care of a relative who subsequently allowed mother to take custody of them. Father told the social worker he was "done" and "[couldn't] do it anymore," and that "the children [were] not getting their emotional needs met" in his care. The Agency filed a dependency petition alleging jurisdiction over N.F. later that month.

The application for protective custody warrant alleged that mother was not participating in services at the time and had been "elusive, making it extremely difficult for this social worker to locate her." The application also alleged that mother's whereabouts were "unknown."

The August 2013 detention report listed no address for mother and showed a new telephone number with a 936 prefix. Mother was notified of the August 12, 2013, detention hearing by telephone on August 9, 2013. Mother did not appear at the hearing, at which N.F. was detained. The juvenile court found mother had been notified of the hearing and instructed mother's counsel to tell mother to keep the court and the social worker "advised at all times of [her] address and phone number."

On August 30, 2013, an Agency supervisor left a voice mail message for mother at the 936 telephone number notifying her of the jurisdiction hearing for N.F. in Orland on September 5, 2013. The September 2013 jurisdiction report related that N.F. and

3

Michael were placed with a nonrelated extended family member in Colusa County. Mother had not submitted to random drug testing since May 2013.

Mother did not appear at the September 5, 2013, jurisdiction hearing on N.F.'s petition. Mother's counsel told the juvenile court that she last had contact with mother "probably a month before jurisdiction or the last detention hearing." Counsel tried to call mother but had no information from her. The juvenile court found mother had been notified and sustained the petition. The juvenile court set the disposition hearing for the same time as the six-month review hearing for Michael—October 3, 2013.

In the October 2013 reports for the combined hearing, the Agency recommended terminating mother's reunification services. She had not visited the minors for nearly two months. Mother continued to be difficult to contact. The social worker wrote: "This social worker has contacted the mother and several people including maternal aunt, foster mother, paternal grandmother, [N.F.'s] father, and services providers ([drug and alcohol counselor, parents anonymous group facilitator, mental health counselor, and others]) in order to know her whereabouts and what services she might be participating in." No one had contact with mother other than the parents anonymous group facilitator once per month in May, July, and August and the foster mother through mother's once-weekly phone calls to the minors. The social worker asked the foster mother to encourage mother to contact the Agency and the social worker.

On September 17, 2013, mother called the social worker from the 936 number to set up visitation. The social worker asked mother for a physical and mailing address. Mother said she did not have a physical address as she stayed with different people, but she provided Orland address No. 1 as her mailing address. The social worker informed mother of the recommendation to terminate services and of the date, time, and location of the combined hearings.

Mother was not present for the October 3, 2013, combined six-month review and disposition hearings. Mother's counsel told the juvenile court, "I have made two

4

appointments and only been able to talk to her once throughout September. And she missed both appointments, and I have not heard from her since." The juvenile court terminated services for mother as to Michael and continued N.F.'s hearing to October 17, 2013.

Mother was not present at the continued hearing, where reunification services for N.F. were not offered pursuant to section 361.5, subdivisions (b)(10), (b)(13), and (b)(15). At both hearings, the juvenile court set a section 366.26 hearing for January 16, 2014, and informed mother through counsel that failure to file a petition for extraordinary writ would forfeit mother's right to appeal the proceedings.

On October 23, 2013, mother was notified by mail at Orland address No. 1 of the section 366.26 hearing. Since mother no longer lived there, she was also personally served with notice of the hearing on November 13, 2013, at the sheriff's office in Willows.

In December 2013 mother filed a petition for modification (§ 388) seeking reinstatement of reunification services and alleging improper notice as to the six-month review and disposition hearings. At a hearing on the petition later that month, the parties stipulated to vacating the section 366.26 hearing and giving mother an additional three months of services, and the juvenile court so ordered. After meeting with counsel for all parties, the juvenile court vacated the order and set a hearing on mother's section 388 petition. At the January 2014 hearing on mother's petition, the juvenile court found mother was not entitled to additional reunification services as a matter of law and set a new section 366.26 hearing.

Mother filed another section 388 petition in February 2014. The petition alleged a lack of notice as to the combined hearings and additional evidence supporting a change to the juvenile court's order. Mother sought to relitigate the denial of services at the combined hearings, or to be offered additional time for services she undertook on her own, or for the minors' return to her custody.

5

The February 2014 section 366.26 report included a response to mother's section 388 petition. The Agency set forth a timeline of the relevant notifications and appearances as follows:

On August 9, 2013, a social worker signed a proof of service for the August 12, 2013, detention hearing stating that she informed mother of the hearing by telephone at the 936 number. Mother did not attend the detention hearing. On August 30, 2013, a supervisor left a voice message at the same number informing mother of the date and time for the jurisdiction hearing. The Agency could not notify mother by mail at the time because she was homeless. Mother was not present at the September 5, 2013, jurisdiction hearing, where mother's counsel noted that she had not been in contact with mother since prior to the recent detention.

During the September 17, 2013, call with mother, the social worker informed mother of the time, date, and location of the combined disposition and six-month review hearing. The social worker also asked mother for a physical address and a mailing address. Mother said she had no physical address but gave Orland address No. 1 as her mailing address. A copy of the jurisdiction report was mailed to mother at this address on September 26, 2013. The report was not returned by mail to the Agency.

Mother was not present at the combined six-month review and disposition hearing on October 3, 2013. The disposition report was mailed to mother at Orland address No. 1 the following day, but the report was returned to the Agency on November 14, 2013, with a post office stamp stating: "Return to Sender/Moved, Left no address, unable to return to sender." Mother was not present for the continued disposition hearing on October 17, 2013. Mother's counsel said she tried to meet with mother, but she "no showed." On October 30, 2013, the Agency tried to personally serve mother at Orland address No. 1 with notice for the January 16, 2014, section 366.26 hearing. Service was unsuccessful because mother did not live there.

On October 31, 2013, mother called the Agency and provided her new address, which was in Sacramento (Sacramento address No. 1). Research by the Agency determined this was not a valid address. A social worker called mother and told her that Sacramento address No. 1 was invalid. The social worker arranged with mother to have her pick up the notice of the section 366.26 hearing. Mother picked up the notice at the sheriff's office in Willows on November 13, 2013.

On December 18, 2013, mother met with a social worker and gave her a new mailing address in Orland (Orland address No. 2); her phone number was still the 936 number. Mother provided another new address in Orland (Orland address No. 3) on January 23, 2014. On February 10, 2014, mother gave the Agency yet another new address in Orland (Orland address No. 4). Four days later, mother told the Agency that the last address was wrong and her address was actually Orland address No. 3.

The section 366.26 report noted that a potential adoptive family had been identified and it appeared to be a very good match. The Agency recommended terminating parental rights and moving forward with a permanent plan of adoption.

Mother was present at the combined section 388 and section 366.26 hearing on March 20, 2014. She testified that she was aware of the initial dependency petition when the second petition was filed. At that time she lived at Orland address No. 1. She next lived at the Westside Domestic Violence Shelter from April 16, 2013, to May 2013. She stayed with a friend in May 2013 and then moved to an address in Sacramento (Sacramento address No. 2) on June 7, 2013.[3]

Via telephone, mother told social worker Wyjay Carson of the move but did not spell the street name for Sacramento address No. 2. Sacramento address No. 1, which had been determined to be an invalid address, was apparently a misspelling of the street

_____

[3] Mother brought in a lease agreement for Sacramento address No. 2 dated June 7, 2013.

name in Sacramento address No. 2. Mother was absent from Sacramento address No. 2 for about three weeks from July to the beginning of August 2013 because she had gone back to Glenn County to address father's anticipated abandonment of the minors. Mother was aware the Agency was filing a new petition after father abandoned the minors. She tried to call social worker Nancy Garcia at the time but did not get a return call. Mother could not remember whether she left Garcia a message.

Mother changed her telephone number from the 988 number to the 936 number on August 3, 2013, and informed Carson of the change. She was not advised of any upcoming hearings during this conversation with Carson. Carson called her on August 9, 2013, and informed her "that there was court," but mother did not know where to go and Carson told mother she did not need to attend.

Mother did not receive the supervisor's voice mail on August 30, 2013, because she could not access her voice mail that month. When Carson left at the end of August 2013 Garcia was assigned as mother's new social worker. In September 2013 Garcia told mother she was recommending termination of reunification services but did not give her the date and time of the relevant hearing. Mother gave Garcia Sacramento address No. 2 and did not tell her that she was homeless. She resided at Sacramento address No. 2 until December 2013 but did not receive any notice of the hearings at that address.

On October 3, 2013, mother got a call from a friend that her children's case was being called at court. She went to the courthouse but did not get there in time. Mother called the Agency on October 31, 2013, and gave them Sacramento address No. 2. She got a voice mail telling her to pick up a notice at the sheriff's office in Willows, where she got the notice of the section 366.26 hearing. This was her first notice of the section 366.26 hearing. She would have come to all hearings had she been given proper notice.

8

The juvenile court found insufficient evidence of a lack of notice and denied mother's petition.  The court then heard argument related to the section 366.26 hearing and terminated parental rights.

## DISCUSSION

## I

Mother contends she was not given notice of the combined six-month review hearing for Michael and disposition hearing for N.F., and for N.F.'s jurisdiction hearing. She further contends the juvenile court erred in terminating reunification services in Michael's case and denying services in N.F.'s case.  These issues arose out of a combined hearing at which the juvenile court terminated services and set a section 366.26 hearing.

Section 366.26, subdivision (*l*) states in pertinent part:  "An order by the court that a hearing pursuant to this section be held is not appealable at any time unless all of the following apply:

"(A) A petition for extraordinary writ review was filed in a timely manner.

"(B) The petition substantively addressed the specific issues to be challenged and supported that challenge by an adequate record.

"(C) The petition for extraordinary writ review was summarily denied or otherwise not decided on the merits."  That section further directs the Judicial Council to adopt a rule to ensure the juvenile court will provide notice to the parties, orally if the parties are present and by mail if they are not, of the requirements to be met to satisfy the statute.  (§ 366.26, subd. (*l*)(3).)

"After the juvenile court makes an order setting a section 366.26 hearing, the court must advise all parties, including a parent, of section 366.26's requirement of filing a petition for extraordinary writ review.  ([Cal. Rules of Court, r]ule 5.590(b); see § 366.26, subd. (*l*)(3)(A).)  The court must give an oral advisement to parties present at the time the order is made.  (Rule 5.590(b)(1); see § 366.26, subd. (*l*)(3)(A).)  The court must explain that the party is required to seek an extraordinary writ by filing a Notice of Intent to File

9

Writ Petition and Request for Record (form JV-820) and a Petition for Extraordinary Writ (form JV-825). (Rule 5.590(b).) 'Within one day after the court orders the hearing under Welfare and Institutions Code section 366.26, the advisement must be sent by first-class mail by the clerk of the court to the last known address of any party who is not present when the court orders the hearing under Welfare and Institutions Code section 366.26.' (Rule 5.590(b)(2).) Copies of Petition for Extraordinary Writ (form JV-825) and Notice of Intent to File Writ Petition and Request for Record (form JV-820) 'must accompany all mailed notices informing the parties of their rights.' (Rule 5.590(b)(4).) Judicial Council form JV-820 contains an advisement about the need to file the notice of intent form to obtain Court of Appeal review of an order setting a section 366.26 hearing and provides important information regarding completion and filing of the form, filing of the writ petition, and specific deadlines." (*In re A.H.* (2013) 218 Cal.App.4th 337, 346-347.)

Mother contends she is excused from the writ petition requirement because the juvenile court did not advise her personally or by mail, instead advising her through counsel at the combined hearing. Her argument overlooks an important exception to this requirement.

A parent who is not available to receive an oral advisement and who does not file a written notification of a change in mailing address is not excused from the writ petition requirement absent a showing of "exceptional circumstances." (*In re A.H.*, *supra*, 218 Cal.App.4th at pp. 348-349.) The cases excusing a parent from the writ requirement all involve parents who could have been advised through reasonable means. "Further, in the published cases that have permitted a parent to challenge the merits of a referral order after failing to take a writ, it is clear that the court in fact failed to give the oral advisement (when the parent was present) or that the written advisement (when the parent was not present) was not sent to or received by the parent. [Citation.]" (*In re T.W.* (2011) 197 Cal.App.4th 723, 730.) Therefore, a juvenile court is not required to take

10

futile or extraordinary measures to inform a parent of the writ requirement if the parent cannot be found.

Mother did not appear at the combined hearing on either of the dates it took place, October 3 and October 17, 2013, even though on September 17, 2013, a social worker orally informed her of the time, date, and nature of the hearing. The address listed for her at the beginning of the dependency was Orland address No. 1. At the detention hearing, mother was advised to make the Agency and the juvenile court aware of any changes to her address or telephone number and was given a form for change of address and telephone number. There is no record of mother ever filling out the form. Nonetheless, mother did orally inform a social worker on September 17, 2013, that she was homeless but that Orland address No. 1 was a valid mailing address for her.

Since mother was not at the combined hearing, the juvenile court could not personally advise her of the writ petition requirement. Although she had the Orland address No. 1 mailing address, the juvenile court's failure to mail notice there is harmless beyond a reasonable doubt. (See *In re J.H.* (2007) 158 Cal.App.4th 174, 183-185 [notice errors subject to harmless beyond a reasonable doubt standard].) The day after the first day of the combined hearing the Agency mailed a copy of the disposition report to that address, but it was returned by the post office with no forwarding address on November 14, 2013. The Agency tried to personally serve mother at Orland address No. 1 on October 30, 2013, but failed as she did not live there. Mother gave a new mailing address to the Agency on October 31, 2013, but that address was invalid. Since mother did not have a valid mailing address on file with the Agency or the juvenile court at the time, she could not be prejudiced by the juvenile court's failure to mail the advisement to a mailing address where she no longer received mail.[4]

---

[4] Although mother's testimony states that she kept the Agency advised of her change in location and that she had never been informed of the combined hearing, the juvenile court

The juvenile court's solution, giving notice to mother through counsel, was the best solution available, even though mother had previously not appeared at meetings with counsel. Mother's failure to inform the Agency and the juvenile court of an address where notice could be mailed and her failure to attend the combined hearings left the juvenile court with no other reasonable means for notifying mother of the writ petition requirement. The court was accordingly excused from having to give notice by other means.

Since the juvenile court adequately advised mother of the writ requirement, mother's failure to petition for extraordinary writ relief forfeits her contentions regarding lack of notice for the combined hearing and that the denial of services was erroneous.

## II

Mother claims the juvenile court erred in failing to rule on the portion of mother's section 388 petition requesting the minors' return or additional services.

On December 2, 2013, mother filed a section 388 petition asking the juvenile court to change its previous order denying reunification services. As new information in support of the petition, mother alleged she had never been given adequate notice of the combined six-month review and disposition hearing. Mother wanted the juvenile court to change its order denying services and to allow mother to continue services. After the juvenile court vacated and then reinstated the initial denial of services, mother filed a new section 388 petition in February 2014, requesting the opportunity to prove she was never given proper notice and to litigate the denial of services or, in the alternative, to have the minors placed with her or be given additional time for the services she had been participating in on her own volition. At the hearing on the petition, the juvenile court

_____

implicitly rejected her testimony when it found adequate notice at the hearing on mother's section 388 petition. We defer to this credibility finding. (*D.M. v. Superior Court* (2009) 173 Cal.App.4th 1117, 1128.)

12

found mother received adequate notice but did not address whether she was entitled to additional services or the minors' return to mother's custody.

A parent petitioning the juvenile court under section 388 for a modification of a court order must allege facts showing the existence of new evidence or changed circumstances and that the proposed modification would be in the child's best interests. (*In re Daijah T.* (2000) 83 Cal.App.4th 666, 671-672.) The parent has the burden of proof by a preponderance of the evidence on both points. (Cal. Rules of Court, rule 5.570(h)(1).)

We review the juvenile court's ruling denying a section 388 petition for abuse of discretion. (*In re S.R.* (2009) 173 Cal.App.4th 864, 866.) We reverse only if the ruling exceeded the scope of the court's discretion or if, under all the evidence (including reasonable inferences from the evidence), viewed most favorably to the ruling, no reasonable judge could have made that ruling. (*Great West Contractors, Inc. v. Irvine Unified School Dist.* (2010) 187 Cal.App.4th 1425, 1459; *In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1351.)

The alleged lack of notice was the only new evidence alleged in the first section 388 petition and was in the second petition as well. While the second petition also alleged mother continued services on her own after they had been terminated, this did not oblige the juvenile court to address whether mother was entitled to additional services or to the minors' return after it found she had been properly notified. The bare allegation that mother continued services on her own was not listed as new information that supported changing the juvenile court's order; the only new information alleged in the petition was the alleged lack of notice. The additional services undertaken by mother and the request for more time for services or the minors' return were in an attachment specifying mother's proposed changes to the prior orders.

The rulings mother claims the juvenile court failed to make were contingent on its first finding that mother had not been properly notified of the combined hearing. Since

13

the juvenile court found mother failed to carry her burden on that essential contention, it did not have to rule on the other requests, which addressed proposed rulings based on a finding of inadequate notice.[5]

## DISPOSITION

The juvenile court's orders are affirmed.

       RAYE       , P. J.

We concur:

      BLEASE     , J.

      BUTZ      , J.

---

[5] Although mother elsewhere contends she was not properly notified of the combined disposition/six-month hearing, she does not contest the juvenile court's findings at the section 388 hearing that she had been properly notified.