[No. B197412. Second Dist., Div. Three. Dec. 28, 2007.]

JENNIFER T., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Real Party in Interest.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105 and 8.1110, the opinion is ordered published with the exception of parts 2. and 3. of the Discussion.

**COUNSEL**

Harry Zimmerman for Petitioner.

No appearance for Respondent.

Raymond G. Fortner, Jr., County Counsel, James M. Owens and Kirstin J. Andreasen, Assistant County Counsel, for Real Party in Interest.

**OPINION**

**KLEIN, P. J.**—Jennifer T., mother of B.T. and S.T., purports to appeal an order of the juvenile court terminating her family reunification services (Welf. & Inst. Code, § 366.21, subd. (e))[1] and setting the section 366.26 permanency planning hearing.[2]

---

[1] All statutory references are to the Welfare and Institutions Code, unless otherwise specified. Also, all rule references are to the California Rules of Court.

[2] No direct appeal lies from an order terminating reunification services and setting the permanency planning hearing. Review of such order is by way of petition for an extraordinary writ. (§ 366.26, subd. (*l*)(3)(A); rule 5.720; *In re Cathina W.* (1998) 68 Cal.App.4th 716, 719 [80

The essential issue presented is whether the juvenile court properly found reasonable reunification services were provided to the mother. We affirm, concluding the record fully supports the juvenile court's ruling.

## FACTUAL AND PROCEDURAL BACKGROUND

The record reflects mother had 10 children. Her five oldest children live in Ohio with their maternal grandmother because, according to mother, she is unable to care for them. Four of those children were adopted by the maternal grandmother in 2001, and she is also seeking to adopt the fifth child in her custody.

Another child, M., died in December 2004 at the age of two months. According to mother, the cause of death was sudden infant death syndrome (SIDS). However, the medical examiner ruled SIDS out and the cause of death was "opined to be undetermined."

On April 18, 2006, the family came to the attention of the Los Angeles County Department of Children and Family Services (DCFS) by way of a referral generated by the child abuse hotline, which alleged mother severely neglected child S.T. by not providing him with appropriate medical care. The referral also alleged that three siblings, Jewel, B.T. and A., were at risk for abuse.

On April 26, 2006, DCFS filed a section 300 petition on behalf of Jewel (age four), B.T. (age three), and S.T. (age three months), alleging S.T. is medically fragile and suffers from asthma and a cardiac disorder, conditions which require appropriate followup medical treatment and medication on a consistent basis, mother's failure to provide S.T. with proper care has resulted in his requiring repeated hospitalizations for emergency treatment, and that siblings Jewel and B.T. were at risk of similar neglect.

At the detention hearing on April 26, 2006, the juvenile court found prima facie evidence for detaining the three minors, finding no reasonable means to protect them without removal from the home.

On May 10, 2006, DCFS filed the operative second amended juvenile dependency petition.

At the hearing held May 10, 2006, mother, represented by counsel, pled no contest to the petition. The juvenile court accepted the plea, sustained the

Cal.Rptr.2d 480].) For the reasons set forth in the Discussion, rather than dismissing the appeal, we construe the matter as a petition for writ of mandate and address the merits of mother's contentions.

petition pursuant to section 300, subdivision (b), by a preponderance of the evidence and declared the minors dependent children of the court.

The court-ordered disposition case plan called for mother's participation in family reunification services consisting of drug rehabilitation with random testing; alcohol program with random testing; parent education; and individual counseling to address case issues, including parenting and substance abuse issues. Mother also was given monitored visitation, with discretion in DCFS to liberalize visitation.

Mother's counsel advised the court that mother "has agreed to the case disposition plan in an effort to cooperate and work with the Department, including testing."

A progress hearing was held one month later, on June 13, 2006. DCFS submitted information that on June 7, 2006, mother had threatened staff members at King-Drew Medical Center Hospital "that if [they] reported anything negative to Court or Child Protective Services, she would come after them and send her gang members after them." DCFS further reported that mother had not contacted her DCFS social worker to receive counseling and drug referrals and had not visited the children. Further, the social worker had attempted to contact mother but mother had not responded.

On August 2, 2006, a DCFS worker provided mother with referrals for parenting, random drug testing, individual counseling and substance abuse programs. Mother signed an acknowledgement that she had received the referrals.

On August 28, 2006, a DCFS worker attempted to contact mother by leaving her a voice mail message. Mother did not respond.

According to a September 5, 2006 report, B.T.'s foster mother indicated mother "visits with [B.T.] . . . sporadically[,] . . . [she] 'pops in' whenever she finds time, but exhibits no consistency in visiting with the child."

On September 29, 2006, a DCFS worker submitted a referral for mother to participate in random drug testing.

On November 29, 2006, one day before a six-month status review, mother came into the DCFS office and met with a social worker, stating she had enrolled in parenting classes on September 18, 2006, and expected to receive a completion certificate on December 13, 2006. In response to the social worker's inquiry about drug testing, mother denied that she was ordered to submit to drug testing. Mother stated she was enrolled in counseling but

could not provide any information as to where she had received services. Mother also stated she was *"considering* participating in a substance abuse program . . . but stated she did not want to participate in a residential program." (Italics added.)

On November 30, 2006, DCFS submitted a status review report for the section 366.21, subdivision (e), six-month review hearing. The report stated "mother had not provided any documentation to the Department that she is in compliance with the court orders," and that the minors' caregivers reported that mother was not visiting the children regularly.

Mother was present at the hearing held on November 30, 2006. Mother's counsel asserted mother had not received her drug testing referral, so the juvenile court ordered DCFS to provide her with a new referral.

Shortly before the January 11, 2007 six-month review hearing, DCFS updated the juvenile court on mother's progress. A letter from Solutions Family Resource Center indicated that as of January 4, 2007, mother was enrolled in an outpatient treatment program and would be participating in parenting classes, 12-step meetings, individual counseling and weekly drug testing. Also, mother had visited the children on Christmas Day and on January 8, 2007, and had failed to show up for a drug test on January 4, 2007.

At the review hearing on January 11, 2007, mother was present with counsel. DCFS recommended that mother's reunification services be terminated. Mother's counsel conceded "that, as of today, she can't meet [the] standard [to extend reunification services]. But she does want the Court to know that she is enrolled at Solution Family Resource Center . . . [a]nd her goal is to file a 388 motion within about six months."

The juvenile court found "by a preponderance of the evidence, that return of the children to the physical custody of the mother at this time would create a substantial risk of detriment to minors' physical and emotional health and safety."

The juvenile court further found "mother has not been able to comply with the case plan. [¶] Reasonable efforts have been made to prevent or eliminate the need for further removal. [¶] The children remain dependents of the court under . . . Section 300. [¶] With respect to mother, family reunification services are terminated. There is little likelihood the children could be placed with her by the .21(f) date." Accordingly, the juvenile court terminated mother's reunification services and set a section 366.26 hearing for B.T. and S.T. for May 31, 2007.

On March 12, 2007, mother filed a notice of appeal purporting to appeal from the January 11, 2007 order terminating reunification services as to B.T. and S.T.

## CONTENTIONS

Mother contends she may challenge the section 366.26 referral order as to S.T. and B.T., notwithstanding her failure to file for writ relief, because the juvenile court did not properly advise her of her writ rights when it terminated family reunification; the juvenile court's section 366.26 referral order must be reversed because the juvenile court never found, and could not have found based on the evidence before it, that the department offered her reasonable reunification services; and the section 366.26 referral order must be reversed because the juvenile court failed to wait the required time period before finding notice was proper under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.).

## DISCUSSION

1.  *Due to juvenile court's failure to duly advise mother of her writ rights, we construe the purported appeal from the January 11, 2007 order terminating reunification services as a petition for writ of mandate.*

■ An order setting a section 366.26 hearing "is not appealable; direct appellate consideration of the propriety of the setting order may be had only by petition for extraordinary writ review of the order. (§ 366.26, subd. (*l*); [citations].)" (*In re Cathina W., supra,* 68 Cal.App.4th at pp. 719–720, fn. omitted.) When the juvenile court orders a hearing under section 366.26, the court must orally advise all parties present that if a party wishes to preserve any right to review on appeal of the order setting the hearing under section 366.26, the party is required to seek an extraordinary writ. (§ 366.26, subd. (*l*)(3)(A); rule 5.600(b).)

Although the January 11, 2007 minute order contains a recital that "[t]he parties are advised of writ procedures in open court," the reporter's transcript establishes the juvenile court failed to orally advise mother of her writ rights. In this regard, the transcript of the hearing indicates the court merely "direct[ed] the clerk to give copies of the writ notices to the mother." Under these circumstances, given this conflict between the juvenile court's statements in the reporter's transcript and the recitals in the clerk's transcript, we presume the reporter's transcript is the more accurate. (See *People v. Smith* (1983) 33 Cal.3d 596, 599 [189 Cal.Rptr. 862, 659 P.2d 1152].)

■ *In re Cathina W.* held that the juvenile court's failure to duly advise the mother of her writ rights entitled the mother to obtain appellate review of the merits of the setting order on the appeal from the termination order. (*In re Cathina W., supra*, 68 Cal.App.4th at pp. 722–724.) The instant matter is in a somewhat different posture. Rather than an appeal from a termination order, we are presented with a purported appeal from the setting order. Because good cause exists for mother's failure to file a timely writ petition from the setting order in accordance with rule 5.600, we construe the purported appeal from the setting order as a petition for writ of mandate.

We are aware *In re Merrick V.* (2004) 122 Cal.App.4th 235 [19 Cal.Rptr.3d 490], held the juvenile court's failure to provide a party with notice of the writ requirement allowed that party to *appeal* the order terminating reunification services and setting a section 366.26 permanency planning hearing. (*In re Merrick V., supra*, at pp. 247–249.) We respectfully disagree with *Merrick*'s resolution of the issue. In California, the right to appeal is entirely statutory. (*Powers v. City of Richmond* (1995) 10 Cal.4th 85, 108 [40 Cal.Rptr.2d 839, 893 P.2d 1160]; *In re Uriah R.* (1999) 70 Cal.App.4th 1152, 1156 [83 Cal.Rptr.2d 314]; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 2, p. 60.) The Legislature has decreed that no direct appeal lies from an order setting a section 366.26 hearing. (§ 366.26, subd. (*l*)(1).) As *Merrick* itself recognized, "All court orders, regardless of their nature, made at a hearing in which a section 366.26 permanency planning hearing is set must be challenged by a petition for extraordinary writ. [Citations.]" (*In re Merrick V., supra*, 122 Cal.App.4th at p. 247.)

Because the right to appeal is purely statutory, an appellate court cannot confer the right to appeal as a remedy for the juvenile court's failure to advise a party of the writ requirement. (§ 366.26, subd. (*l*)(3)(A).) Instead, we believe the proper approach to the juvenile court's failure to advise a party of the writ requirement is that the party is entitled to obtain direct review of the order setting a section 366.26 hearing by way of an ordinary petition for writ of mandate, without regard to the shortened period for writ review that would otherwise be applicable. (Rules 8.450, 8.452.) Therefore, due to the juvenile court's failure to duly advise mother of her writ rights, we construe the purported appeal from the January 11, 2007 order terminating reunification services and setting a section 366.26 hearing as a petition for writ of mandate.

We now turn to the merits of mother's contentions.

2., 3.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 254.

## DISPOSITION

The petition for writ of mandate is denied.

Kitching, J., and Aldrich, J., concurred.

On January 24, 2008, the opinion was modified to read as printed above.