Filed 4/21/15  In re Jasmine O. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

In re JASMINE O., a Person Coming Under the Juvenile Court Law.

---

SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,

        Plaintiff and Respondent,

        v.

SELENE L.,

        Defendant and Appellant.

D066526

(Super. Ct. No. CJ1085A)

APPEAL from a judgment of the Superior Court of San Diego County, Laura J. Birkmeyer, Judge. Affirmed.

Neil R. Trop, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Paula J. Roach, Deputy County Counsel, for Plaintiff and Respondent.

Carl J. Fabian, under appointment by the Court of Appeal, for Minor.

Selene L. appeals a judgment terminating her parental rights to her daughter, Jasmine O., under Welfare and Institutions Code section 366.26, and the juvenile court's rejection of the San Diego County Health and Human Services Agency's (Agency) recommendation to move Jasmine from her paternal aunt's home to her maternal great aunt's home. (Undesignated statutory references are to the Welfare and Institutions Code.) Selene contends (1) the juvenile court should have reviewed the Agency's placement decision for an abuse of discretion rather than under a best interest standard, and (2) the juvenile court erred in failing to apply the sibling relationship exception to adoption. The Agency agrees with Selene that the juvenile court incorrectly applied the best interest standard in reviewing the Agency's placement selection. Minor's appellate counsel disagrees with Selene and the Agency regarding the applicable standard and requests that we affirm the juvenile court's judgment in its entirety. We conclude the juvenile court applied the proper standard in reviewing the Agency's placement selection and substantial evidence supported the court's decision that the sibling relationship exception to adoption did not apply.

FACTUAL AND PROCEDURAL BACKGROUND

In June 2012, when Jasmine was approximately three weeks old, the Agency filed a dependency petition on her behalf because she tested positive for methamphetamine at birth and Selene had a history of drug use and neglecting Jasmine's half siblings. The juvenile court assumed jurisdiction, removed Jasmine from Selene's care and placed Jasmine with her father. Shortly thereafter, the Agency filed a supplemental petition alleging that the order placing Jasmine with her father had not been effective in

2

protecting Jasmine as the father had sent Jasmine out of the county in violation of the court's order and was incarcerated. Jasmine was detained in a foster home. Later, the Agency placed Jasmine with a paternal relative in Anaheim, California.

In 2013, Jasmine's four half siblings became dependents of the juvenile court. The Agency placed Jasmine's half siblings with Rosa A., Jasmine's maternal great aunt. Jasmine visited her half siblings every week. Jasmine also had two visits per month with her father and weekly visits with Selene. In August 2013, Jasmine began travelling to Tecate, Mexico and spent weekends in her paternal aunt Esmeralda O.'s home to accommodate Jasmine's father's visits at that location.

At the September 2013 six-month review hearing, the juvenile court terminated Selene's services and ordered the father be provided another six months of services. In November of that year, Jasmine's paternal relative with whom she had been placed, requested that Jasmine be removed from her care due to conflicts with Jasmine's maternal family members.

The Agency recommended placing Jasmine in the home of her maternal great aunt, Carmen G. According to the Agency, it feared that if Jasmine was placed in Esmeralda's home, Jasmine's sibling visitation would diminish. Moreover, the Agency reported difficulties contacting Esmeralda by telephone, making communication between the Agency and caretaker difficult.

At a contested 12-month permanency hearing in January 2014, the court terminated Jasmine's father's services. In considering Jasmine's placement, the court noted there had been a history of conflicts between maternal and paternal relatives. After

3

considering the factors set forth in section 361.3, the court placed Jasmine in Esmeralda's home in Tecate. The court noted that Jasmine had established a close relationship with Esmeralda and that Esmeralda was willing to facilitate visits with Jasmine's half siblings. The court ordered Esmeralda to make Jasmine available for visits with Jasmine's half siblings and to supervise the father's visits.

In May 2014, the court held a section 366.26 hearing. In its section 366.26 report, the Agency noted Jasmine was developmentally on track, showed behaviors indicating she loved her family members, and would be fine if adopted by either side of the family. The Agency, however, sought to move Jasmine from Esmeralda's home to Carmen's home. According to the Agency, placement in Carmen's home would be in Jasmine's long-term best interest. The Agency noted Carmen's home was close to Rosa's home where Jasmine's half siblings resided. Accordingly, placement in Carmen's home would allow Jasmine to maintain close contact with her half siblings. The Agency also stated it did not feel it was in Jasmine's best interest to leave her with Esmeralda because Esmeralda had not followed through with conditions of Jasmine's placement, such as calling the social worker on a weekly basis, and had been resistant to the Agency's requests in regard to sibling visits.

At the section 366.26 trial, the court considered termination of parental rights, adoption as Jasmine's permanent plan, and the Agency's request to change Jasmine's placement under section 366.26, subdivision (k) from Esmeralda's care to Carmen's care. The court received considerable evidence on the strength of the relationships between

4

maternal relatives and Jasmine, paternal relatives and Jasmine, and between Jasmine and her half siblings.

Jessica Cota, a protective services worker assigned to evaluate a permanent placement for Jasmine, testified that both Carmen's and Esmeralda's families had approved home studies for Jasmine's placement. Cota observed Carmen interact with Jasmine on two occasions and reported Jasmine was familiar with Carmen. After her placement in Tecate, Jasmine had eight visits with her half siblings that were approximately three to four days at a time. Carmen interacted with Jasmine at Rosa's home at each of the sibling visits. Carmen believed Jasmine was attached to her.

Jasmine was always excited to see her half siblings. At the end of visits, Jasmine and her half siblings had a difficult time separating from each other. Cota described Jasmine's relationship with her half siblings as a loving one and stated it was the only constant relationship Jasmine had in her life. Cota recommended placing Jasmine with Carmen in part because Jasmine's half siblings would be nearby.

Cota believed Jasmine was developing an attachment issue because Jasmine detached easily from her caregivers for sibling visits and had considerable difficulty when she would leave her half siblings after visits. Cota believed Jasmine had attached to Esmeralda and Esmeralda's husband and that Jasmine loved them. However, Cota opined that Jasmine would suffer no serious detriment to her emotional well-being if moved from Esmeralda's home. Cota did not believe Jasmine had substantial emotional ties to Esmeralda as Jasmine had only lived with Esmeralda for five months at that point and had moved around substantially prior to her placement with Esmeralda.

5

On about five occasions, Cota had driven to the San Diego-Mexico border to pick Jasmine up from Esmeralda and take her to Los Angeles for sibling visits. Jasmine cried during the first couple of exchanges when she had to leave Esmeralda.

Cota testified that Esmeralda had previously stated that it was a hardship to transport Jasmine to the border for the sibling visits and that it was a financial burden on her family. Esmeralda, however, always complied with transporting Jasmine. Cota believed that if Jasmine remained in Esmeralda's home, it would substantially interfere with Jasmine's sibling relationships because the Agency had significantly assisted with transporting Jasmine for her sibling visits. The Agency could no longer assist with sibling visits after Jasmine's adoption. Despite the strength of the sibling relationships, the Agency was still recommending adoption for Jasmine because the benefits of adoption were not outweighed by the sibling relationships.

Esmeralda testified it would be a financial burden to take Jasmine to Los Angeles twice a month for sibling visits. However, Esmeralda wanted Jasmine to have positive sibling relationships and was willing to transport Jasmine from Mexico to Los Angeles for those visits. Esmeralda planned to arrange for sibling visits every six weeks.

By April 2014, Esmeralda's relationship with Cota was strained and Esmeralda did not feel Cota was supporting her. Cota told Esmeralda that if she did not comply with the Agency's requirements, the Agency would take Jasmine away from her. Esmeralda was always fearful and did what Cota told her to do.

After considering the evidence, the court terminated parental rights and ordered adoption as Jasmine's permanent plan. The court rejected the Agency's decision to move

6

Jasmine from Esmeralda's home in Tecate to Carmen's home. In making its ruling on the placement issue, the trial court engaged in an extensive recitation of the factors, law, and evidence it considered. Initially, the court set forth the requirements of section 366.26, subdivision (k), known as the "caretaker preference." The court noted that other courts have found under that section, it is not the court's assessment that controls; rather, the agency's assessment controls absent an abuse of discretion.

Regarding the court's rejection of the Agency's placement determination, the court went on to state, "This is not a matter of the court just having a different view. [The court] find[s] that the facts don't support the [Agency's] underlying assessment." Moreover, the court was concerned that the Agency's evaluation of Jasmine's placement with Esmeralda was not done in good faith. In particular, the court detailed evidence demonstrating the social worker treated Esmeralda unfairly and imposed responsibilities on Esmeralda not required by the court's prior orders. Of notable concern, the court found the social worker's assessment that Jasmine had attachment problems was "based on ludicrous assumptions and a paucity of information" and "the Agency did not engage in a fair process in determining whether there are substantial emotional ties [between Jasmine and Esmeralda], or whether it would be seriously detrimental to [Jasmine's] emotional well being." The court continued that in terms of the Agency's evaluation of Jasmine's relationship with Esmeralda and Esmeralda's family, the social worker did not observe the relationship other than during brief exchanges when the social worker picked Jasmine up for purposes of sibling visitation.

7

Ultimately, the court concluded Esmeralda's family "did not get a fair shot nor did they get a level playing field in terms of assessing their relationship with Jasmine. . . . [¶] Implicit in the Agency's role in . . . making informed determinations pursuant to [section 366.26,] subdivision (k) as to substantial emotional ties and serious detriment to a child's emotional well-being is that it be done with integrity and unbiased and occur with offensive of rigor and fairness. . . . [¶] . . . Indeed, before making these very significant determinations that will clearly affect a child's future, the Agency should employ a fair informed method, and that did not happen here."

DISCUSSION

I. *Request to Dismiss Minor's Brief*

Jasmine's appellate counsel filed a brief arguing we should affirm the juvenile court's decision declining to move Jasmine from Esmeralda's home to Carmen's home. This argument is contrary to the position Jasmine's trial counsel took in the juvenile court and the Agency's position on appeal. However, Jasmine's appellate counsel stated, Jasmine's "[t]rial counsel had no objection to appellate counsel taking a different position on the placement issue on appeal."

The Agency filed a letter brief requesting that we dismiss a portion of minor's brief. Specifically, the Agency asserted that the portion of minor's brief concerning the placement issue should be dismissed because appellate counsel was not *unequivocally* authorized to take a position different from that of Jasmine's trial counsel. (See *In re Josiah Z.* (2005) 36 Cal.4th 664, 678.) Subsequently, Jasmine's appellate counsel filed a declaration unequivocally stating trial counsel consented to appellate counsel asserting a

8

different position than asserted at trial. Accordingly, to the extent there was an ambiguity or deficiency in Jasmine's appellate counsel's brief, it has been cured and we decline to dismiss any portion of the brief.

## II. *Jasmine's Placement*

Selene and the Agency argue the juvenile court applied an incorrect standard in reviewing the Agency's placement determination declining to move Jasmine from Esmeralda's care to Carmen's care. Specifically, they assert the juvenile court should have reviewed the Agency's placement determination for an abuse of discretion rather than under a best interest standard. We reject this argument.

Preliminary, we note that "[a]fter parental rights have been terminated pursuant to Section 366.26, an order by the court that a dependent child is to reside in, be retained in, or be removed from a specific placement, is not appealable at any time unless all of the following apply: [¶] (A) A petition for extraordinary writ review was filed in a timely manner." (Section 366.28, subd. (b)(1).) A petition for extraordinary writ review was not filed in this case. However, we exercise our discretion to construe the appeal on the placement issue as a petition for extraordinary writ review and consider the argument on the merits. (See *Jennifer T. v. Superior Court* (2007) 159 Cal.App.4th 254, 255, fn. 2 [construing appeal from nonappealable order as petition for writ of mandate].)

Following termination of parental rights, the juvenile court must refer the dependent child to the State Department of Social Services or a licensed adoption agency for adoptive placement. (§ 366.26, subd. (j); Cal. Rules of Court, rule 5.725(e)(3).) The department or agency is responsible for the custody and supervision of the child and is

9

entitled to exclusive care and control of the child until a petition for adoption is granted. (§ 366.26, subd. (j).) Similarly, Family Code section 8704 provides that the department or agency has exclusive custody and control of the child until adoption, including the discretion to terminate any placement for temporary care or for adoption. (Fam. Code, § 8704, subd. (a).)

Relying on these statutory provisions, the appellate court in *Department of Social Services v. Superior Court* (1977) 58 Cal.App.4th 721, 733 (*Department of Social Services*), concluded the Legislature granted the social services agency the exclusive custody, control and supervision of a child referred for adoptive placement. "This exclusive authority expressly includes decisions on adoptive placement as well as temporary care, i.e. foster care placement pending adoptive placement. Moreover, the Legislature explicitly has provided that, prior to the filing of a petition for adoption, the [social services] agency may change an adoptive placement at its discretion." (*Ibid.*)

The social services agency's decision on placement pending adoption cannot be overturned absent a showing that the agency abused its discretion. (*Department of Social Services*, *supra*, 58 Cal.App.4th at p. 733.) The role of the juvenile court is limited to reviewing whether the agency abused its discretion by placing the child or determining whether or not a placement continues to be appropriate. (*Id.* at p. 734.) The court in *Department of Social Services*, *supra*, cautioned that the juvenile court must not substitute its judgment for that of the agency, but may assess only whether the agency acted arbitrarily or capriciously. (*Ibid.*) "Absent a showing that [the Agency's] placement decision is patently absurd or unquestionably not in the minor's best interests,

10

the juvenile court may not interfere and disapprove of the minor's placement, thereby requiring that the minor be relocated to another home." (*Ibid.*)

However, "[t]he Agency's discretion regarding interim and adoptive placement is not unfettered.  [Citation.]  The court retains jurisdiction over the child to ensure the adoption is completed as expeditiously as possible and to determine the appropriateness of the placement.  ([Citation]; see § 366.3, subd. (f)(12) [[T]he court is required to 'make appropriate orders to protect the stability of the child and to facilitate and expedite the permanent placement and adoption of the child.'].)  Thus the Agency does not have 'carte blanche' to make placement decisions.  [Citation.]" (*In re Shirley K.* (2006) 140 Cal.App.4th 65, 72.)

Here, the Agency sought to move Jasmine's placement from Esmeralda's care to Carmen's care under section 366.26, subdivision (k).  That section provides the following: "Notwithstanding any other provision of law, the application of any person who, as a relative caretaker or foster parent, has cared for a dependent child for whom the court has approved a permanent plan for adoption, or who has been freed for adoption, shall be given preference with respect to that child over all other applications for adoptive placement *if the agency making the placement determines that the child has substantial emotional ties to the relative caretaker or foster parent and removal from the relative caretaker or foster parent would be seriously detrimental to the child's emotional well-being*." (Italics added.)  Thus, the Agency sought to deny Esmeralda the caretaker's preference under section 366.26, subdivision (k), by putting forth evidence it suggested supported its determination that Jasmine did not have substantial emotional ties to

Esmeralda and changing Jasmine's placement would not be detrimental to Jasmine's emotional well-being.

Selene and the Agency contend that the court applied a best interest standard to review the Agency's placement decision rather than the proper inquiry of whether the Agency abused its discretion. Based on our review of the record, although the juvenile court repeatedly referenced Jasmine's "best interest," it undoubtedly found the Agency acted arbitrarily or capriciously in making its placement decision. The juvenile court commenced its ruling with a recitation of the Agency's position regarding the court's limited role in reviewing the Agency's determination under section 366.26, subdivision (k). The court then employed the Agency's proffered standard.

The juvenile court found the Agency failed to "employ a fair informed method" for making its placement recommendation. Specifically, the court found the Agency presented an insufficient factual basis for its opinions that it would not be detrimental to remove Jasmine from Esmeralda's care and Jasmine did not have substantial emotional ties to Esmeralda. In rendering its findings, the juvenile court stated, the Agency did not engage in a fair process and its conclusions were based on "ludicrous assumptions and a paucity of information." The court noted that the social worker never observed Jasmine in Esmeralda's care beyond five 15-minute intervals when Jasmine was under the stress of being exchanged and transported for visits. The court also found the Agency over emphasized the need to place Jasmine close to her half siblings as Jasmine would not be living in the same household and placement with Carmen would not ensure Jasmine would always be in close proximity to her half siblings or would develop strong sibling

12

relationships. Additionally, the court found the social worker treated Esmeralda unfairly by imposing a level of responsibility on Esmeralda not required or intended by the juvenile court and subsequently portrayed Esmeralda's failure to meet the Agency's unduly burdensome requirements as problems or failures to the court. Accordingly, the court concluded the Agency did not employ a fair informed method in making its placement determination.

The evidence supported the juvenile court's finding that the Agency abused its discretion by acting arbitrarily or capriciously in making its placement decision. According to Cota, Jasmine had attached to Esmeralda and Esmeralda's husband and loved them. Cota's report concluded that "placement [with Esmeralda's family] has given Jasmine a loving home environment." Despite this acknowledgement, Cota stated Jasmine would suffer no serious harm if she was removed from Esmeralda's care. This assessment was largely based on Cota's opinion that Jasmine had "insecure-avoidant attachment" because she detached easily from her caregiver when she was transported for sibling visits and easily said goodbye to her half siblings. However, Cota testified that Jasmine cried during the first few exchanges when she had to leave Esmeralda. Further, in her report, Cota stated, "Jasmine is eager and happy to greet [Esmeralda] (and her family) when being returned from a sibling visit and cries for a few minutes when separated from them to be transported to L.A." As the juvenile court aptly noted, Cota only observed Jasmine interact with Esmeralda and Esmeralda's family for five to ten minutes at a time when Cota was either picking Jasmine up or dropping her off. Cota

13

never requested an appointment with Esmeralda and Esmeralda's family to observe their relationship with Jasmine.

Additionally, the Agency faulted Esmeralda for alleged failures never required by the court. For example, although the juvenile court did not require Esmeralda to call the Agency weekly, the Agency criticized Esmeralda for not doing so. The court merely stated it would like Esmeralda to speak with the Agency weekly. It did not specify whether the Agency or Esmeralda should make those calls. Similarly, the Agency stated Esmeralda was "resistant to the requests of the Agency in respect to the sibling visits." However, Esmeralda always complied with transporting Jasmine for sibling visits.

Based on our review of the record, the juvenile court employed the proper standard in reviewing the Agency's placement determination and the court's findings were supported by substantial evidence.

III. *Sibling Relationship Exception to Termination of Parental Rights*

Selene contends the sibling relationship exception of section 366.26, subdivision (c)(1)(B) applied to preclude termination of parental rights. She asserts the record shows Jasmine has a strong, beneficial relationship with her half siblings and terminating that relationship would be detrimental to Jasmine.

Adoption is the permanent plan favored by the Legislature. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 573.) If the court finds by clear and convincing evidence that a child is adoptable, it becomes the parent's burden to show that termination of parental rights would be detrimental to the child because of a specified statutory exception to termination of parental rights and adoption. (*Id*. at p. 574.) The sibling relationship

14

exception to terminating parental rights applies when the juvenile court finds termination of parental rights would substantially interfere with the child's sibling relationship and the severance of the relationship would be so detrimental to the child as to outweigh the benefits of adoption. (§ 366.26, subd. (c)(1)(B)(v); *In re L. Y. L.* (2002) 101 Cal.App.4th 942, 951-952.) The purpose of this exception is to preserve long-standing sibling relationships that serve as "anchors for dependent children whose lives are in turmoil." (*In re Erik P.* (2002) 104 Cal.App.4th 395, 404.)

Factors to be considered in determining whether this exception applies include (1) whether the siblings were raised in the same home, (2) whether they shared significant common experiences or have existing close and strong bonds, and (3) whether ongoing contact is in the child's best interests, including his or her long-term emotional interests, as compared to the benefit of adoption. (§ 366.26, subd. (c)(1)(B)(v).) "[T]he application of this exception will be rare, particularly when the proceedings concern young children whose needs for a competent, caring and stable parent are paramount." (*In re Valerie A.* (2007) 152 Cal.App.4th 987, 1014.)

We review a juvenile court order declining to apply an exception to termination of parental rights and adoption for substantial evidence. (*In re L. Y. L.*, *supra*, 101 Cal.App.4th at p. 947.) We do not evaluate the credibility of witnesses, reweigh the evidence, or resolve evidentiary conflicts. (*Ibid.*) Rather, we draw all reasonable inferences in support of the juvenile court's findings, consider the record most favorably to the juvenile court's order, and will affirm the order if it is supported by substantial evidence even if other evidence supports a contrary conclusion. (*Ibid.*)

15

Here, Jasmine was only two years old at the time of the section 366.26 hearing. She undoubtedly enjoyed spending time with her half siblings and often had a difficult time leaving them at the end of visits. However, Cota testified that based on her observations of Jasmine during sibling visits, maintaining the sibling relationships would not outweigh the benefits Jasmine would receive from adoption. According to Cota, Jasmine had three placement changes since she was born and adoption would offer her beneficial stability and permanency.

This evidence amply supported the juvenile court's conclusion that the sibling relationship exception to terminating parental rights did not apply. Although Jasmine lived with her half siblings for a short time after she was born, she was not raised with them for the majority of her young life. Jasmine had continued contact with her half siblings after her birth. However, the trial court reasonably could infer the experiences Jasmine had with her half siblings as an infant and toddler would not be as meaningful to her as to her older half siblings. (*In re Valerie A.*, *supra*, 152 Cal.App.4th at p. 1013.) Further, "the court reasonably could determine [Jasmine's] long-term emotional interests, due to [her] age[] and needs, were better served by the permanency of adoption rather than by continued sibling contact." (*Ibid.*)

In view of Jasmine's circumstances and her age, the record supports the juvenile court's conclusion that Jasmine's long-term emotional interest would be better promoted by adoption then by maintaining sibling relationships. (§ 366.26, subd. (c)(1)(B)(v).)

16

DISPOSITION

The judgment is affirmed.


                                                                    McINTYRE, J.

WE CONCUR:

McCONNELL, P. J.

McDONALD, J.