Filed 8/26/15 E.R. v. Super. Ct. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| E.R.,<br><br>        Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF LOS ANGELES,<br><br>        Respondent;<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Real Party in Interest. | B260638<br><br>(Los Angeles County<br> Super. Ct. No. CK82780) |

PURPORTED APPEAL from orders of the Superior Court of Los Angeles County, treated as petition for writ of mandate. Amy Pellman, Judge. Petition denied.

Lori Siegel, under appointment by the Court of Appeal, for Petitioner.

No appearance for Respondent.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, William D. Thetford, Principal Deputy County Counsel, for Real Party in Interest.

\* \* \* \* \* \* \* \*

This is an appeal from disposition orders removing S.R., a newborn, from mother's custody, denying her reunification services, and setting a hearing to select a permanent plan pursuant to Welfare and Institutions Code section 366.26. The court clerk did not give mother the required advisement notifying her of the right to challenge the setting of the section 366.26 hearing. Accordingly, we construe the purported appeal from the order setting the section 366.26 hearing as a petition for writ of mandate. (*Jennifer T. v. Superior Court* (2007) 159 Cal.App.4th 254, 259.)

Mother, who did not attend the disposition hearing, contends the court abused its discretion in denying the motion of her counsel to continue the hearing. Mother also contends there is no substantial evidence to support the court's order removing S.R. from her custody, and the court failed to consider alternatives to removal. She also contends there is no substantial evidence to support the court's finding the Los Angeles County Department of Children and Family Services (Department) made reasonable efforts to provide family reunification services before the disposition hearing. Finally, she contends the court abused its discretion by denying her reunification services at the disposition hearing. We find no merit in any of mother's arguments. We deny the petition for writ of mandate and affirm the orders.

## BACKGROUND

On the day S.R. was born, in June 2014, the Department received a referral that mother had given birth to him, and that she had severe untreated mental health issues that led to the removal of an older child and mother's loss of custody of that child. S.R. was on a hospital hold until he was detained and placed in foster care. In its petition, the Department gave notice that it may ask the court to order no reunification services pursuant to Welfare and Institutions Code section 361.5.

Mother had previously given birth to twins. N.C. survived but the other twin was stillborn. Mother's ensuing depression led to the detention of N.C. In that case, the court sustained allegations concerning mother's debilitating mental health issues and her failure to take prescribed psychotropic medication. The court ordered reunification services, but mother failed to reunify with N.C. Dependency jurisdiction over N.C. terminated with

2

orders granting physical and legal custody to N.C.'s father, with mother to have monitored visits.

S.R. has a different father, who is not a party to this appeal.

On July 21, 2014, at the jurisdiction hearing in this case, mother pled no contest to allegations that she "has a history of mental and emotional problems including affective disorder, depression, bipolar disorder, suicide ideation and suicide attempts," which render "the mother . . . unable to provide regular care of [S.R.]. On prior occasions, the mother was involuntarily hospitalized for the evaluation and treatment of her psychiatric condition. [S.R.'s] sibling, [N.C.], was a prior dependent of the Juvenile Court due to the mother's mental health issues. Mother's unresolved mental health issues endanger[] [S.R.'s] health and safety and place[] [S.R.] at risk of harm."

We describe in further detail below, in our discussion of mother's claim that the court abused its discretion by denying her reunification services, the evidence in support of these undisputed facts.

After sustaining the allegations of the petition, the court continued the disposition hearing to September 16, 2014, and ordered an Evidence Code section 730 evaluation of mother to be completed by Dr. Nancy Kaser-Boyd, at the request of mother's counsel. On September 8, 2014, Dr. Kaser-Boyd sent a letter to the court by facsimile stating that mother was scheduled for an evaluation in Dr. Kaser-Boyd's office on September 5, 2014, but she failed to show up for her appointment.

In a last minute information for the court, the Department advised the court that mother had not seen S.R. since July 30, 2014, and she had canceled visits scheduled for August 16 and August 23. The social worker and the foster parent had been unable to get in touch with mother. When they called mother's phone number, they heard recordings stating, on separate occasions, the number was disconnected, and it could not receive incoming messages. The social worker went to the home of maternal grandmother, with whom mother had said she planned to live if S.R. were returned to her custody. Grandmother said mother had moved out and was not communicating with her. Mother

3

called the social worker on September 2, saying her sister had "kicked her out of the family home." Mother provided a new address.

Mother was not present at the disposition hearing, and her counsel offered no explanation for her absence. Mother's counsel told the court, "[M]y office has spoken with [mother] about her appointments [*sic*] and she stated that Dr. Kaser-Boyd's office has contacted her, asked her a few questions, but that she never received a call back. So I'm just not sure if there is lack of communication or what exactly is going on, but I would request that this matter be continued for another opportunity for my client to contact and. . . ." The court interrupted counsel to state the disposition hearing had already been continued once, and the court denied a further continuance.

The detention report, the jurisdiction/disposition report, and the last minute information for the court were admitted into evidence without objection. No witness was called to testify. Counsel proceeded by way of argument. The court ordered no family reunification services for mother pursuant to Welfare and Institutions Code section 361.5, subdivision (b)(10) and set a hearing to select a permanent plan pursuant to section 366.26. Mother appealed.

## DISCUSSION

**1.     The Court Did Not Abuse Its Discretion by Denying the Motion to Continue the Disposition Hearing.**

"The juvenile court may continue a dependency hearing at the request of a parent for good cause and only for the time shown to be necessary. ([Welf. & Inst. Code,] § 352, subd. (a); Cal Rules of Court, rule 1422(a)(2).) Courts have interpreted this policy to be an express discouragement of continuances. (See, e.g., *In re Emily L.* (1989) 212 Cal.App.3d 734, 743.) The court's denial of a request for continuance will not be overturned on appeal absent an abuse of discretion. (See *In re Angela R.* (1989) 212 Cal.App.3d 257, 265-266.) Discretion is abused when a decision is arbitrary, capricious or patently absurd and results in a manifest miscarriage of justice. (*People v. Franco* (1994) 24 Cal.App.4th 1528, 1543.)" (*In re Karla C.* (2003) 113 Cal.App.4th 166, 179-180 (*Karla C.*).)

*Karla C.* is instructive in considering mother's claim. In *Karla C.*, a six-week-old infant was taken into protective custody when police investigated a report of domestic violence, and the mother explained the violence occurred during a several-day methamphetamine binge with the alleged father. The detention hearing was held on February 4, 2003. The court ordered the alleged father to appear for a paternity test on February 7, but he missed the appointment. On February 25, the court ordered the alleged father to appear the following day for paternity testing, which he did. On March 13, mother submitted to jurisdiction and disposition as recommended by the agency. The alleged father requested a continuance so the court could receive the results of the paternity testing. The agency opposed the request, arguing the results would not be available for several more weeks. The trial court denied the request for a continuance. (*Karla C.*, *supra*, 113 Cal.App.4th at p. 172.)

The Court of Appeal found no abuse of discretion, reasoning as follows:

"A disposition hearing must be conducted within 60 days of the detention hearing. ([Welf. & Inst. Code,] § 352, subd. (b).) On March 13 when the court denied [alleged father's] request for a continuance, the evidence was that the paternity test results would not be available for several more weeks, or well past the 60-day limit of section 352, subdivision (b). Under the circumstances, the court did not abuse its discretion by proceeding without the test results. We are unpersuaded by [alleged father's] assertion the test results actually became available within 50 or 57 days of the mandatory cut-off date, as we evaluate the court's reasonableness as of the time it made its decision.

"We also reject [alleged father's] contention he was not given 'any *meaningful* opportunity to perfect his paternity status.' On February 4, the court made a timely paternity inquiry and promptly ordered paternity testing to take place on February 7. [Alleged father] did not show up for the testing, and there is no suggestion he brought this to the court's attention until February 25, when the court ordered him to undergo testing the following day. Thus, [alleged father], and not the court, caused the delay." (*Karla C.*, *supra*, 113 Cal.App.4th at p. 180.)

Likewise, here, mother has not demonstrated the court abused its discretion. The detention hearing in this case was held on June 24, 2014. The adjudication hearing was held on July 21, 2014. Mother waived her right to a hearing, after her counsel and the court explained her rights, and the court found the waiver was knowing and intelligent. At mother's request, the disposition hearing was continued to September 16, 2014, to give her a chance to be evaluated by Dr. Kaser-Boyd. Mother did not show up for her appointment. Mother's counsel speculated there may have been a lack of communication between mother and Dr. Kaser-Boyd's office staff, but readily acknowledged she did not know "what exactly is going on." Assuming a "lack of communication" between mother and Dr. Kaser-Boyd accounted for mother's failure to keep her appointment for the Evidence Code section 730 evaluation, the court did not abuse its discretion in finding that was not good cause for a continuance. As *Karla C.* reminds us, 60 days from detention is the "mandatory cut-off date" for the disposition hearing, "unless the court finds that there are exceptional circumstances requiring such a continuance." (*Karla C.*, *supra*, 113 Cal.App.4th at pp. 214-215; see also Welf. & Inst. Code, § 352, subd. (b).) The mandatory cut-off date for the disposition hearing in this case was August 25, 2014 (as the 60th day fell on a Saturday). At mother's request, the court continued the disposition once, to September 16, 2014, 84 days after detention.

The court did so to accommodate mother, although the court did not need an Evidence Code section 730 evaluation for purposes of deciding whether to remove S.R. from mother's custody or whether to offer mother reunification services pursuant to Welfare and Institutions Code section 361.5, subdivision (b)(10). Indeed, the Evidence Code section 730 evaluation was irrelevant to the issues (1) whether the court previously terminated reunification services for S.R.'s half sibling, N.C., because mother failed to reunify with N.C. after she was removed from mother's custody, and (2) whether mother made reasonable efforts to treat the problems that led to N.C.'s removal. Mother offered no evidence to explain her failure to appear for her Evidence Code section 730 evaluation, leaving her counsel to speculate there was a "lack of communication." Mother offered no evidence she had rescheduled, or tried to reschedule, her appointment.

6

Indeed, mother did not even show up for the disposition hearing. Mother's own conduct was the sole reason for the absence of an Evidence Code section 730 evaluation, and no exceptional circumstances justified a further continuance of the disposition hearing. Under the circumstances, we cannot find the court abused its discretion by denying a further continuance.

**2.  Substantial Evidence Supported the Order Removing S.R. From Mother's Custody, and the Court Had No Duty to Consider Alternatives to Removal.**

We find baffling mother's argument that there was "no evidence mother endangered [S.R.]," and "no evidence of any current mental health concern which prohibited Mother's care of her son." We need not repeat in full the sustained allegations of the petition, to which mother pled no contest. We need not repeat in full the facts summarized above that were described with great detail in the Department's reports that were received into evidence without objection. To briefly summarize, it was undisputed that mother had severely debilitating, unresolved mental health issues that endangered S.R.'s health and safety and placed S.R. at risk of harm. Mother points to the evidence that she received prenatal care, nursed S.R. in the hospital, and when interviewed by a social worker in the hospital, "said she felt good and loved her baby" and that she would "do anything" to get her baby back. But the substantial weight of the evidence, and the uncontested allegations of the petition, establish S.R. could not be safely returned to mother.

Likewise, we find no basis for mother's argument that the court was obligated to consider at the disposition hearing whether there were reasonable alternatives to removal of S.R. from mother's custody. The Department correctly points out that Welfare and Institutions Code section 361, subdivision (c)(1), which defines and limits the circumstances under which a child may be removed from a parent's custody, does not require the court to consider whether the parent has received services before removal. Mother's argument is a red herring.

**3.      The Department Had No Duty to Provide Reasonable Reunification Services Before the Disposition Hearing.**

Equally baffling is mother's argument the court erred in finding at the disposition hearing that the Department had provided reasonable services to mother. We find the contention baffling, first, because the court made no such finding. Mother cites to page 4 of the reporter's transcript of the disposition hearing. Nowhere on page 4, or at any other time during the hearing, did the court find the Department had provided reasonable services to mother. The reporter's transcript on page 4 reflects that, among other findings and orders, the court found the Department made reasonable efforts to prevent and eliminate the need for the child's removal. We presume it is that finding which mother mischaracterizes as a finding concerning reasonable services. It is not.

We also find the argument baffling because Welfare and Institutions Code section 361.5, subdivision (b)(10), the authority for the court's decision to deny mother reunification services after removing S.R. from her custody, does not require the court to consider whether a parent previously received services. This argument is another red herring.

**4.      The Court Did Not Abuse Its Discretion by Denying Mother Reunification Services Under Welfare and Institutions Code Section 361.5, Subdivision (b)(10).**

Generally, parents whose children are removed from their custody receive reunification services in an attempt to eliminate the conditions that led to loss of custody and facilitate reunification of parents and children. (*In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 478.) There are some circumstances, however, in which the Legislature has recognized "that it may be fruitless to provide reunification services." (*Ibid.*) Subdivision (b) of Welfare and Institutions Code section 361.5 sets forth these circumstances in 15 statutory exceptions. "Once it is determined one of the situations outlined in subdivision (b) applies, the general rule favoring reunification is replaced by a legislative assumption that offering services would be an unwise use of governmental resources." (*Baby Boy H.*, at p. 478.)

8

Under Welfare and Institutions Code section 361.5, subdivision (b)(10), reunification services need not be provided when (1) the court terminated reunification services for any sibling (including half siblings) of the child at issue because the parent failed to reunify with the sibling after he or she had been removed from the parent, and (2) the parent has not made reasonable efforts to treat the problems that led to the sibling's removal. (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 96, 98.) We review an order bypassing reunification services for substantial evidence. (*Id.* at p. 96.) Even when clear and convincing evidence is required below, we review the record only for substantial evidence in support of the order, bearing in mind the heightened standard of proof. (*In re Jasmine C.* (1999) 70 Cal.App.4th 71, 75.) "In making this determination, we recognize that all conflicts are to be resolved in favor of the prevailing party and that issues of fact and credibility are questions for the trier of fact. [Citations.] The reviewing court may not reweigh the evidence when assessing the sufficiency of the evidence." (*Ibid.*)

Mother does not dispute the court terminated reunification services for S.R.'s half sibling, N.C., because mother failed to reunify with N.C. after she was removed from mother's custody. Nor does mother contend she made reasonable efforts to treat the problems that led to N.C.'s removal. She makes no claim there was no substantial evidence to support the court's findings that mother "failed to reunify with a sibling or half sibling, and she has not subsequently made reasonable efforts to treat the problems [that] led to the removal of the sibling or half sibling."

Indeed, the record contains overwhelming evidence that for most of her life, mother has suffered severe mental health issues that required treatment, yet mother remained in denial that she needed therapy or medication. Although mother did not contest the jurisdiction findings that she "has a history of mental and emotional problems including affective disorder, depression, bipolar disorder, suicide ideation and suicide attempts," which render "the mother . . . unable to provide regular care of [S.R.]," she consistently told the Department's social workers that she felt "fine" and "good;" that she did not know what her mental health diagnosis was; that she had not sought counseling

9

after the court terminated jurisdiction over her first child; and that she had never been prescribed psychotropic medication.  The jurisdiction and disposition report contains the following:

"During the prior case, mother was reported to have recurring suicidal thoughts and ideation, and has attempted to commit suicide on two prior occasions.  During the prior case, mother did not follow through with mental health treatment and did not make herself available to receive the services that she needed.  During the prior case, it was reported that mother avoided [an Evidence Code section] 730 evaluation.  Mother eventually had family reunification services terminated in 2012 due to mother's mental health issues and lack of compliance.  [¶]  Additionally, mother has a history of psychiatric hospitalizations and there was a previous DCFS case that was open to her family, when she was a minor, due to similar concerns about mother's mental health needs not being addressed.  The mother is currently [not receiving] mental health services nor is on psychotropic medication for her reported disorders."  In the investigation in this case concerning S.R., mother told the social workers she did not complete counseling in the previous DCFS case "because it was too far," and later "because she did not have directions to get to the mental health agency."

The jurisdiction and disposition report also contains the following:

"Mother reported that she has had numerous psychiatric hospitalizations in the past and it had occurred so much that she had lost count.  Mother reported that she does not remember much from these hospitalizations except that she was on medication and she did not like it.  Mother informed [investigating social worker] that she does not remember such things.  Mother denied remembering suicide attempts.  In the 2010 PRC Report [the earlier DCFS case involving her first child], mother did recall attempting to commit suicide on two separate occasions by hanging herself and jumping out of a two-story window.  She reported that she does not remember why she tried to commit suicide, but she does not think of those things nowadays.  During the PRC interview, the mother denied any DCFS history as a child.  However, during the 2010 PRC interview, the

10

mother also remembers that there was an open DCFS case on MGM due to her not meeting her mental health needs."

In its assessment and evaluation, the Department concluded: "The mother does not have the support of the maternal family in seeking mental health treatment as the maternal grandmother continues to deny the mother's mental health issues. [¶] Based on the mother's history and non-compliance and inability to care for her children, it is likely that the mother's mental health will continue to go untreated."

Mother argues the court abused its discretion by failing to consider she received prenatal care, exhibited no behavior that alarmed the nurses in the hospital, breastfed S.R. in the hospital, loved her son, was willing to comply with the Department's requests and case plan, and maintained contact with her attorney. As to the latter points, we find *no* evidence supports the contention that mother was willing to comply with the Department's requests and case plan, and the record reflects only one phone call between mother and her counsel, which left counsel unable to explain why mother missed her appointment with Dr. Kaser-Boyd. As for mother's behavior toward S.R. in the hospital after his birth, we note that he was transported to a foster home three days after his birth.

We do not minimize the positive behavior mother demonstrated by getting prenatal care and during the three days with S.R. in the hospital, but find the events preceding and following the brief period mother spent with S.R. under hospital supervision support the finding no purpose would be served by offering mother reunification services. Between July 30, a week after the adjudication hearing, and September 10, a week before the disposition hearing, mother had not seen S.R. and had canceled two visits scheduled with the foster mother. Mother moved out of maternal grandmother's home and was no longer in touch with her family. There is no evidence mother has ever made any attempt to receive mental health services at any time since reunification services were terminated for her older child. Mother would have us reweigh the evidence and place greater weight on the facts she argues are true, which we cannot do.

11

**5.      There Was No Error in Setting the Welfare and Institutions Code**

**Section 366.26 Hearing.**

Having found no merit in any of mother's arguments, we deny the petition for a writ of mandate challenging the setting of a hearing to select a permanent plan for S.R.

## DISPOSITION

The petition for writ of mandate is denied, and the trial court's orders are affirmed.


                                                GRIMES, J.

WE CONCUR:


           BIGELOW, P. J.



           RUBIN, J.