Filed 2/10/22  In re Antonio E. CA2/7

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re ANTONIO E., JR., et al., Persons Coming Under the Juvenile Court Law. | B311659 (Los Angeles County Super. Ct. No. 19CCJP08119) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. ANTONIO E., SR., Defendant and Appellant. LORENA H., Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mary E. Kelly, Judge. Affirmed.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Stephen Watson, Deputy County Counsel, for Plaintiff and Respondent.

Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Respondent.

_____

Antonio E., Sr. (Father), appeals from the final custody order entered by the juvenile court when it terminated jurisdiction over 15-year-old twins Antonio E., Jr. (Antonio), and Manuel E. at the Welfare and Institutions Code[1] section 364 status review hearing. Father contends the court violated his due process rights in entering the custody order granting Lorena H. (Mother) sole legal and physical custody of the children without providing him actual notice of the hearing and abused its discretion in limiting Father's visitation to one monitored visit per year. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

A. *The Referral, Investigation, and Petition*

On October 17, 2019 the Los Angeles County Department of Children and Family Services (Department) received a referral

_____

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

2

through the child abuse hotline alleging emotional abuse of Antonio and Manuel by Father. The reporter stated that the previous night Father became angry with Mother because he believed she had been unfaithful. Father grabbed Mother by the hair, dragged her 200 feet around the mobile home park where the family lived, and hit her in the face multiple times. Mother escaped Father's grasp, ran into the family home, and locked the door. Father forced his way inside and continued to hit Mother on her face and body. Mother again escaped and called 911. Mother had a large bruise on the left side of her face. Manuel, then 13 years old, unsuccessfully tried to stop Father, and both children witnessed the fight.

Father left the scene before the police arrived, and the responding officers assisted Mother in obtaining an emergency protective order. Mother told a social worker that Father hit her with his fist and slapped her, and she sustained bruising for which she received medical treatment at the hospital.[2] The children were not injured.

On October 23 the social worker interviewed the children at school. Manuel stated he witnessed the fight and tried to intervene to protect Mother. Antonio stated he saw Father drag Mother and strike her with his open hands. Manuel was not afraid of Father but felt "'sad and frustrated'" and thought Father's treatment of Mother was "'not right.'" Manuel felt safe with Mother, stating, "'[M]y mother is always with me and my brother . . . . I believe Father is the problem.'" Antonio was not

---

[2] According to the Pomona Police Department report, Father also threatened to kill Mother if she called the police.

afraid of Father, but stated he "'prefer[red] to keep a distance from him when he is mad with mom.'"[3]

Also on October 23 Pomona Police Department officers arrested Father, who was hiding in a shed by the family home. Father was arrested for spousal abuse, making a criminal threat, and child cruelty. On October 25 the superior court issued a three-year criminal protective order restraining Father from contacting Mother and the children and coming within 100 yards of them or the family home.

On the morning of November 21 the social worker visited Mother's home and found an adult man inside. Mother, appearing anxious, stated the man was a friend. Later that day Mother informed the social worker the man was Father, and he had threatened to kill her if she did not allow him access to the home. On November 26 Mother told the social worker Father followed her car on multiple occasions and continued to harass her in person and by telephone.

On December 18 Mother reported Father was living in the family home, and she had moved with the children into the home of a female friend. That day the social worker reached Father by telephone, and Father confirmed he was living in the home. Father said he was complying with the criminal protective order and had not had contact with Mother or the children, but he would like to visit the children.

On December 20, 2019 the Department filed a petition on behalf of Antonio and Manuel under section 300, subdivisions (a) and (b)(1), alleging Father engaged in a violent altercation with

---

[3]    According to the police report, on the night of the October 16, 2019 incident, Manuel told police he was afraid that Father might hurt Mother, and Antonio was in fear for Mother's life.

4

Mother in the children's presence and caused her injury; Father had been arrested for domestic violence, threats, and child cruelty; Father had violated a restraining order; and Mother failed to protect the children from Father's abuse. At the December 23 detention hearing, the juvenile court ordered the children detained from Father and released to Mother. Father filed a notification of mailing address (Judicial Council form JV-140) (form JV-140) listing the address of the family home in Pomona as his address.

B. *The Jurisdiction and Disposition Report and Hearing*

The dependency investigator separately interviewed Antonio, Manuel, and Mother on January 30, 2020. Antonio now reported there was no history of violence between the parents, he did not witness them physically fighting on October 16, 2019, and he had lied to the police about the incident because he was tired and "'wanted it to be over.'"

Manuel told the dependency investigator he saw only part of his parent's argument and "'[i]t was not that violent.'" Although Father grabbed Mother on the shoulder and seemed as though he was going to hit her, Manuel did not see Father strike Mother or pull her hair. He acknowledged Mother was bruised and went to the hospital. Manuel felt safe with both parents and hoped the family could live together in the same home.

Mother told the dependency investigator Father had changed over the past two years, and she believed Father had started to use drugs.[4] Mother reported that about two weeks

---

[4] Father was arrested in 2016 for possession of drug paraphernalia, in 2018 for possession of drug paraphernalia and

earlier, Father attacked a truck in which Mother was sitting with her male friend. According to the police report, on January 15, 2020 Father came up to the truck and started banging on the driver's side window and shouting at Mother's friend. Father kicked the driver's-side door, causing a dent, then broke the rear window and pulled back on the friend's seatbelt. Mother told the responding police officers that Father had been violent with her in the past and threatened to kill anyone she tried to date.

Father told the dependency investigator during a February 3, 2020 interview that he and Mother argued, but he had never struck Mother, "'[a]nd never in front of the kids.'" The dependency investigator believed the family remained at a very high risk and expressed a concern that the children were minimizing past events and Father was denying there was domestic violence.

At the February 19, 2020 jurisdiction and disposition hearing, Mother and Father pleaded no contest to the allegations under section 300, subdivision (b)(1); the court dismissed the allegation under section 300, subdivision (a).[5] The juvenile court declared the children dependents of the court, removed them from Father's custody, and released them to Mother under Department supervision. The court granted Father three monitored visits per week for one to three hours each visit. The

---

possession of a controlled substance, and in 2019 for possession of drug paraphernalia and attempted receipt of stolen property, but Father had suffered no convictions as of January 31, 2020.

[5] The petition was amended to strike the allegation Father had been arrested for domestic violence, threats, and child cruelty, and the allegation that Mother failed to protect the children from Father's abuse.

court also ordered the Department to provide family reunification services to Father.  Father was ordered to participate in a domestic violence program, individual counseling to address case issues, a drug program, and random drug testing.  The court ordered the parents to appear for a six-month status review hearing (§ 364) on August 27, 2020, which was later continued to March 15, 2021 as a result of the COVID-19 pandemic.  The court ordered the Department to provide notice to the parties of the continued hearing.

C.      *The Status Review Reports and Hearing*

The August 4, 2020 status review report stated Father had not contacted the Department or visited with the children since the jurisdiction hearing.  The Department tried to contact Father numerous times by telephone but received no answer.  A criminal database search indicated Father had been arrested on May 12, 2020 and sent to a detention center, and Father was currently incarcerated in San Bernardino County.  Father did not enroll in any court-ordered programs.  The children appeared healthy, happy, and bonded with Mother, although Mother reported they missed Father and blamed her for his absence.  Manuel stated, "'I am very happy here with mom and feel safe.'"  Antonio stated, "'I am happy with my mom, I think I understand better what happened between my mom and dad.'"

The Department sent referrals to Father at his last known address (on the form JV-140), but it received no response.  However, on October 20, 2020 Father met with the social worker at the Department's office, and Father reported he had recently been released from jail after being incarcerated for four to five months.  Father stated he planned to ask his brother to facilitate

monitored visits with the children. After the meeting, however, Father did not answer the social worker's calls and failed to contact the social worker again.

The Department later determined Father had been arrested for petty theft on February 6, 2021 and released. Father still had not submitted proof of enrollment in any court-mandated programs. The Department recommended the juvenile court terminate jurisdiction with an order granting full custody to Mother and monitored visits for Father. On March 3, 2021 the Department sent notice of its recommendation and the March 25 status review hearing to Father at his last known address (on the form JV-140) and to his attorney.

As of the March 9, 2021 status review report, Father had not visited the children for more than a year. Mother did not intend to return to Father, and she felt Father "'prefers drugs more than his own children.'" The children were doing very well in school, and Mother reported her adult son was also residing with the family and providing support for the children.

Father did not appear at the March 25, 2021 status review hearing. Father's attorney objected to the hearing notice, arguing the Department knew Father failed to respond to prior notices sent to his last known address yet failed to try to locate Father, for example, by contacting relatives. The Department countered that notice was properly sent to the address listed on Father's form JV-140. The juvenile court agreed that notice was proper, although it observed that if it had conducted the detention hearing,[6] it would have admonished the parents that

---

[6] Juvenile Court Referee Cynthia A. Zuzga presided over the December 23, 2019 detention hearing. Judge Mary E. Kelly presided over the subsequent proceedings.

they must keep their form JV-140 address up to date. The court initially indicated it would continue the hearing out of an abundance of caution, but it reconsidered its decision and overruled Father's objection to notice in light of evidence the social worker met with Father on October 20, 2020.

The juvenile court terminated jurisdiction, awarded Mother sole custody of the children, and granted Father one monitored visit each year on Father's Day. The court stated, "In the report it's noted that the children have not seen their father for more than a year. The children are disappointed. However, as [M]other indicated, Father prefers drugs more than his child[ren]. That seems to show a lot of insight into Father's lack of contact with the Department as well." The parties and their counsel did not address Father's visitation at the hearing. The court stayed its order pending receipt of a juvenile custody order from the Department. On April 1 the court entered the custody order. Father timely appealed.[7]

## DISCUSSION

A. *The Juvenile Court's Issuance of the Final Custody Order Did Not Violate Father's Due Process Rights*

Father contends the juvenile court violated his due process rights by significantly limiting his visitation (to one day each

---

[7] Although Father filed his notice of appeal on March 25, 2021, before the juvenile custody order was entered, we deem the premature notice of appeal to have been filed immediately after the subsequently entered order. (*Fuller v. First Franklin Financial Corp.* (2013) 216 Cal.App.4th 955, 959; see Cal. Rules of Court, rule 8.104(d)(2).)

9

year) without actual notice or an opportunity to be heard. Father's contention lacks merit.

We review Father's due process challenge de novo. (See *In re D.H.* (2017) 14 Cal.App.5th 719, 728, 731-732 [court reviews de novo presumed father's due process challenge to termination of his parental rights without making finding of his unfitness or detriment to child]; *In re A.B.* (2014) 230 Cal.App.4th 1420, 1434 [court reviews de novo mother's due process challenge based on failure to hold evidentiary hearing before denying her family reunification services and issuing exit orders allowing only monitored visitation with her children].)

Section 364, subdivision (a), provides, "Every hearing in which an order is made placing a child under the supervision of the juvenile court pursuant to Section 300 and in which the child is not removed from the physical custody of his or her parent or guardian shall be continued to a specific future date not to exceed six months after the date of the original dispositional hearing. . . . The court shall advise all persons present of the date of the future hearings, of their rights to be present, and to be represented by counsel." Section 292, subdivision (d), requires that notice of a section 364 status review hearing contain "a statement regarding the nature of the hearing to be held and any change in the custody or status of the child being recommended by the supervising agency" and "a statement that the child and the parent or parents or legal guardian or guardians have a right to be present at the hearing, to be represented by counsel at the hearing and the procedure for obtaining appointed counsel, and to present evidence regarding the proper disposition of the case."

Section 292, subdivision (d), provides further, "The notice shall also state that if the parent or parents or legal guardian or

10

guardians fail to appear, the court may proceed without them." Service of the notice must be made to the "presumed father or any father receiving services" (§ 292, subd. (a)(2)), and must be made by personal service, first-class mail, or certified mail with return receipt requested, "addressed to the last known address of the person to be noticed . . . ." (*Id*., subd. (e).) Further, "notice of the hearing shall be served not earlier than 30 days, nor later than 15 days, before the hearing." (*Id*., subd. (c); see Cal. Rules of Court, rule 5.706(a) ["The petitioner or the court clerk must give notice of review hearings on *Notice of Review Hearing* (form JV-280), in the manner provided in section 292, to all persons required to receive notice under section 292 . . . ."].)

The notice to Father complied with section 292's notice requirements. On March 3, 2020, three weeks before the March 25, 2021 hearing, the Department served Father with a notice of review hearing (using Judicial Council form JV-280) by first-class mail to his last known address, which was the address listed on Father's December 23, 2019 form JV-140. The notice of review hearing, as well as the attached status report, advised Father, as required by section 292, subdivision (d), that the Department was recommending the juvenile court "terminate jurisdiction with a family law order giving sole legal, sole physical custody to Mother [and] monitored visits for Father." (Capitalization omitted.) The form also stated, as required by section 292, subdivision (d), that the court would proceed with the hearing even if Father was not present, and at the hearing the court could "remove custody from parents . . . and make orders regarding placement, visitation and services."

The Department was not required, as Father argued below, to undertake additional efforts to locate Father. Section 316.1,

11

subdivision (a), provides, "Upon his or her appearance before the court, each parent or guardian shall designate for the court his or her permanent mailing address."  (Accord, Cal. Rules of Court, rule 5.534(i).)  A parent's designated permanent mailing address provided at the first appearance "is used by the court and the social services agency for notice purposes *unless and until* the parent provides written notice of a new mailing address."  (*In re A.H.* (2013) 218 Cal.App.4th 337, 348, citing § 316.1, subd. (a).)  Service of a hearing notice by mailing notice to the address reflected on a parent's form JV-140 is effective even if the juvenile court has reason to know the notice "was not served to an address best calculated to provide [the parent] actual notice." (*In re J.R.* (2019) 42 Cal.App.5th 513, 528 [mailing to address on mother's latest form JV-140 was sufficient to satisfy mother's due process right to notice of requirement to file writ challenging termination of family reunification services and setting section 366.26 hearing, notwithstanding Department's knowledge that Mother had been residing at other address for seven months].)  Moreover, it is undisputed Father's attorney was served with notice, and Father did not submit any evidence showing he had a different address or was unaware of the hearing.

Father also contends the court's modifications to the existing visitation order were so dramatic (limiting him to one visit per year) that it was "tantamount to finding of detriment," without giving Father notice of the juvenile court's intent and an opportunity to contest the findings.  This argument fails because Father was on notice that the Department in its status review report recommended termination of jurisdiction at the status review hearing.  Section 362.4, subdivision (a), provides that "[i]f the juvenile court terminates its jurisdiction over a minor who

12

has been adjudged a dependent child . . . the juvenile court on its own motion, may issue . . . an order determining the custody of, or visitation with, the child." The Department also notified Father it recommended Mother have sole legal and physical custody with unspecified "monitored visits for Father." (Capitalization omitted.) Father was therefore on notice that the court would likely make an order at the status review hearing regarding his visitation. Father has not cited any authority, nor is there, for the proposition that a juvenile court has no authority to enter a custody order that significantly differs from the recommendation of the Department. And, as the notice mailed to Father's last known address made clear, the status review hearing would proceed regardless of whether Father appeared, and the court could enter an order removing custody from a parent and establishing visitation. That is precisely what the juvenile court did.

B.    *Father Forfeited His Argument the Juvenile Court Abused Its Discretion in Limiting Father's Visitation*

In determining custody or visitation, the juvenile court's primary consideration is the best interests of the child. (*In re Chantal S.* (1996) 13 Cal.4th 196, 206; *In re John M.* (2013) 217 Cal.App.4th 410, 421.) We review the court's entry of a visitation order for an abuse of discretion. (*In re J.P.* (2019) 37 Cal.App.5th 1111, 1119; *In re S.H.* (2011) 197 Cal.App.4th 1542, 1557-1558 ["dependency law affords the juvenile court great discretion in deciding issues relating to parent-child visitation, which discretion we will not disturb on appeal unless the juvenile court has exceeded the bounds of reason"].)

13

Father contends the trial court abused its discretion in restricting his visitation to one day per year because the order was not supported by substantial evidence that visitation would be detrimental to the children.[8]  However, Father forfeited this issue because his lawyer failed to object to the custody order at the status review hearing, and Father did not appear.  (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["a reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court"]; *In re Maria Q.* (2018) 28 Cal.App.5th 577, 590 ["'A party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court.'"].)  Forfeiture is not automatic, "[b]ut the appellate court's discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue."  (*In re S.B.*, at p. 1293; accord*, In re C.M.* (2017) 15 Cal.App.5th 376, 385; but see *In re D.H., supra*, (2017) 14 Cal.App.5th at p. 728 [father did not forfeit contention his due process rights were violated by court's termination of parental rights without finding of parental unfitness or detriment to the child].)  Here, we have rejected Father's due process challenge, and his remaining challenge to the final custody order does not raise an important issue of law; rather, Father questions whether

_____

8       Father cites to the standard for issuance of a removal order at the disposition hearing (not at issue here) that a child may only be removed from a custodial parent if there is clear and convincing evidence there is or would be a substantial danger to the child's physical health, safety, protection, or physical or emotional well-being if the child is returned to the parent, and there are no reasonable means to protect the child without removal.  (See § 361, subd. (c)(1); *In re D.P.* (2020) 44 Cal.App.5th 1058, 1065.)

14

the juvenile court abused its broad discretion in crafting the visitation order.

Moreover, even if Father had not forfeited his contention, the juvenile court did not abuse its discretion in limiting Father's visitation to one day per year. The sustained findings included that on October 16, 2019 Father grabbed Mother by the hair and dragged her, struck Mother's face with his fists, and threatened to kill her. The children were present, and Manual attempted to intervene to assist his Mother. In October 2019 the superior court issued a three-year criminal protective order restraining Father from contact with Mother, the children, and family home. On November 27, 2019 Father was found at the family home in violation of the order. In January 2020—just weeks before the jurisdiction and disposition hearing—Father attacked a vehicle while Mother and her male friend were inside. In the year leading up to the status review hearing, Father never visited the children; he failed to participate in any court-mandated programs, including drug testing, counseling, and a domestic violence program; he failed to contact the Department except for one occasion in October 2020; and he was arrested and jailed multiple times. Father denied there was any abuse. And although he indicated at his meeting with the social worker that he wanted to arrange visits with the children, he never contacted the social worker again or returned multiple calls.

Further, there was evidence the children were healthy and happy in Mother's care without any visitation from Father. Although the children initially minimized Father's abuse and blamed Mother for separating their family, as of early 2021 the children completed family preservation services and counseling and reported feeling safe and loved by Mother. Under these

circumstances, the trial court did not abuse its broad discretion in finding that it was in the best interests of the children for Father not to receive more frequent visitation. (*In re S.H., supra,* 197 Cal.App.4th at pp. 1557-1558.)

## DISPOSITION

The juvenile custody order is affirmed.

FEUER, J.

We concur:

PERLUSS, P. J.

SEGAL, J.